# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**     **2. PLEASE TYPE OR PRINT.**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption:<br><br>Arias v. Gutman, Mintz, Baker & Sonnenfeldt PC and 1700 Development Co. (1500), Inc. | District Court or Agency:<br><br>SD NY | Judge:<br><br>Hon. George B. Daniels |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>June 8, 2016 | District Court Docket No.:<br><br>1:15-cv-09388-GBD |
| | Date the Notice of Appeal was Filed:<br><br>June 24, 2016 | Is this a Cross Appeal?<br><br>Yes     ✓ No |

| **Attorney(s) for Appellant(s):**<br><br>✓ Plaintiff<br><br>Defendant | Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:<br><br>Ahmad Keshavarz, The Law Office of Ahmad Keshavarz, 16 Court St., Suite 2600, Brooklyn, NY 11241. Phone: (718) 522-7900. Fax: (877) 496-7809. Email: ahmad@NewYorkConsumerAttorney.com |
|---|---|
| **Attorney(s) for Appellee(s):**<br><br>Plaintiff<br><br>✓ Defendant | Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:<br><br>Kenneth A. Novikoff, Rivkin Radler, Kenneth A. Novikoff, Esq., 926 RXR Plaza, Uniondale, NY 11556-0926, Phone (516) 357-3110 Fax (516) 357-3333 email: ken.novikoff@rivkin.com |

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>108 | Number of Exhibits Appended to Transcript:<br><br>None | Has this matter been before this Circuit previously?     Yes     ✓ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION;  (2) THE RESULT BELOW;  (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND  (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

## PART A:  JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| U.S. a party          Diversity<br><br>✓ Federal question          Other (specify):<br>(U.S. not a party)          _____ | Final Decision          Order Certified by District Judge (i.e.,<br>                              Fed. R. Civ. P. 54(b))<br><br>Interlocutory Decision<br>Appealable As of Right          Other (specify): _____ |

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

## PART B: DISTRICT COURT DISPOSITION   (Check as many as apply)

### 1. Stage of Proceedings

✓ Pre-trial
  During trial
  After trial

### 2. Type of Judgment/Order Appealed

  Default judgment
  Dismissal/FRCP 12(b)(1)
    lack of subj. matter juris.
  Dismissal/FRCP 12(b)(6)
    failure to state a claim
  Dismissal/28 U.S.C. § 1915(e)(2)
    frivolous complaint
  Dismissal/28 U.S.C. § 1915(e)(2)
    other dismissal

  Dismissal/other jurisdiction
  Dismissal/merit
  Judgment / Decision of the Court
  Summary judgment
  Declaratory judgment
  Jury verdict
  Judgment NOV
  Directed verdict
✓ Other (specify): FRCP 12(c)

### 3. Relief

✓ Damages:
  ___ Sought: $ unspecified
  ___ Granted: $ _____
  ___ Denied: $ _____

✓ Injunctions:
  Preliminary
✓ Permanent
  Denied

## PART C: NATURE OF SUIT   (Check as many as apply)

### 1. Federal Statutes

  Antitrust
  Bankruptcy
  Banks/Banking
  Civil Rights
  Commerce,
  Energy
  Commodities
  Other (specify): _____

  Communications
✓ Consumer Protection
  Copyright ☐ Patent
  Trademark
  Election
  Soc. Security
  Environmental

  Freedom of Information Act
  Immigration
  Labor
  OSHA
  Securities
  Tax

### 2. Torts

  Admiralty/
  Maritime
  Assault /
  Defamation
  FELA
  Products Liability
  Other (Specify):

### 3. Contracts

  Admiralty/
  Maritime
  Arbitration
  Commercial
  Employment
  Insurance
  Negotiable
  instruments
  Other Specify

### 4. Prisoner Petitions

  Civil Rights
  Habeas Corpus
  Mandamus
  Parole
  Vacate Sentence
  Other

### 5. Other

  Forfeiture/Penalty
  Real Property
  Treaty (specify):
  Other (specify): _____

### 6. General

  Arbitration
  Attorney Disqualification
  Class Action
  Counsel Fees
  Shareholder Derivative
  Transfer

### 7. Will appeal raise constitutional issue(s)?
  Yes   ✓ No

Will appeal raise a matter of first impression?

  Yes   ✓ No

---

1. Is any matter relative to this appeal still pending below?      Yes, specify: _____   ✓ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)   Arises from substantially the same case or controversy as this appeal?      Yes   ✓ No

    (B)   Involves an issue that is substantially similar or related to an issue in this appeal?      Yes   ✓ No

If yes, state whether   "A," or   'B," or   both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant:

---

| Date: July 20, 2016 | Signature of Counsel of Record: /s/ Ahmad Keshavarz |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1.   Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2.   File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3.   Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE:   IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

# ADDENDUMS TO PRE-ARGUMENT STATEMENT (FORM C)

## ADDENDUM "A":

## (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION;

Plaintiff Franklin Arias brought suit against Defendant Gutman, Mintz, Baker & Sonnenfeldt, P.C. ("GMBS"), a debt collection law firm, for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., New York State General Business Law § 349, New York State Judiciary Law § 487, and for conversion, and against Defendant 1700 Development Co. (1500), Inc., the judgment creditor, for conversion alone.

Plaintiff alleged that GMBS wrongly maintained a restraint on his bank account, which consisted entirely of Social Security retirement benefits, even after he provided GMBS with a sworn statement and documentary proof that his account contained only funds that are exempt from collection. Specifically, Plaintiff alleged that in response to his claim that his funds were exempt, GMBS – without having a factual basis or exercising professional judgment, as required by state law and the FDCPA – simply filed a form "robo-objection" designed to mislead Plaintiff, prolong the restraint on Plaintiff's account, deter Plaintiff from pursuing his exemption claim, and, ultimately, coerce payment from exempt funds. Plaintiff further alleged that GMBS has a pattern and practice of violating the law in this manner.

At oral argument, the District Court recognized that Plaintiff's allegations gave rise to significant factual questions about whether GMBS could have reasonably believed that Plaintiff's account contained non-exempt funds, and about whether GMBS's misrepresentations – including those concerning the degree and nature of the evidence needed to prove that Plaintiff's funds were exempt – would have been misleading to the least sophisticated consumer. Yet the District Court granted GMBS's Rule 12(c) motion for judgment on the pleadings, holding, based on an unduly narrow and incorrect reading of the FDCPA, that GMBS's misrepresentations relating to Plaintiff's exemption claims could not be deemed material. The District Court further found that GMBS's actions did not violate the FDCPA because GMBS was acting in accordance with state law – a finding that is both legally and factually incorrect. The District Court ignored the most important issue in the case, which is whether GMBS's actions in filing a robo-objection to Plaintiff's exemption claims – allegations which the Court must take as true at this stage of the proceedings – give rise to FDCPA liability.

**(2) THE RESULT BELOW;**

The District Court granted the Fed.R.Civ.P. 12(c) motion of Defendant Gutman Mintz Baker & Sonnenfeldt PC ("GMBS") dismissing Plaintiff's Fair Debt Collection Practices Act claim. The Court declined supplemental jurisdiction over Plaintiff's state law claims against GMBS and against 1700 Development Co. (1500), Inc., and dismissed those claims without prejudice.

**ADDENDUM "B":**

**A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

1. Whether the District Court erred in holding that Plaintiff failed to state a claim under the FDCPA, given that Plaintiff plausibly alleged that Defendant GMBS failed to exercise professional judgment in responding to Plaintiff's exemption claim and instead filed a form "robo-objection" designed to mislead Plaintiff, prolong the restraint on Plaintiff's account, deter Plaintiff from pursuing his exemption claim, and, ultimately, coerce payment from exempt funds.

2. Whether the District Court erred in holding that Defendant GMBS's misrepresentations could not be deemed material under the FDCPA.

3. Whether the District Court erred in holding that Defendant GMBS was immunized from FDCPA liability because Defendant had complied with procedures under state law, given Defendant's obligation to comply with *both* the FDCPA *and* state law, and given Plaintiff's allegations in the complaint that Defendant failed to follow state law.

4. Whether the Court should exercise supplemental jurisdiction over Plaintiff's state law claims.

The standard of review for all of these issues is *de novo*.

(3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Franklin Arias
_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

Gutman Mintz Baker & Sonnenfeldt PC

**1700 DEVELOPMENT CO. (1500), INC.**
_____

(List the full name(s) of the defendant(s)/respondent(s).)

15 CV 09388 ( GBD )( )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties:   Franklin Arias
_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the      ☑ judgment    ☑ order    entered on:   June 8, 2016

(date that judgment or order was entered on docket)

that:   granted Defendant's FRCP 12(c) motion for judgment on the pleadings.

(If the appeal is from an order, provide a brief description above of the decision in the order.)

June 24, 2016
_____
Dated

Keshavarz, Ahmad
_____
Name (Last, First, MI)

16 Court St., # 2600   Brooklyn
_____
Address                           City

(718) 522-7900
_____
Telephone Number

Ahmad Keshavarz
_____
Signature*

Digitally signed by Ahmad Keshavarz
DN: cn=Ahmad Keshavarz, o=The Law Office of Ahmad
Keshavarz, ou, email=ahmad@NewYorkConsumerAttorney.com,
c=US
Date: 2016.06.23 20:05:56 -04'00'

NY             11241
_____
State          Zip Code

ahmad@newyorkconsumerattorney.com
_____
E-mail Address (if available)

---

*Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

CLOSED,APPEAL,ECF

## U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:15–cv–09388–GBD

| | |
|---|---|
| Arias v. Gutman Mintz Baker &Sonnenfeldt PC et al | Date Filed: 11/30/2015 |
| Assigned to: Judge George B. Daniels | Date Terminated: 06/08/2016 |
| Cause: 15:1692 Fair Debt Collection Act | Jury Demand: Both |
| | Nature of Suit: 480 Consumer Credit |
| | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Franklin Arias** | represented by | **Susan Soojin Shin** |
| | | Neighborhood Economic Development |
| | | Advocacy Project |
| | | 176 Grand Street |
| | | Suite 300 |
| | | New York, NY 10013 |
| | | (212)–680–5100 |
| | | Fax: (212)–680–5104 |
| | | Email: susan@nedap.org |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Ahmad Keshavarz** |
| | | Ahmad Keshavarz, Law Offices |
| | | 16 Court Street |
| | | 26th Floor |
| | | Brooklyn, NY 11241 |
| | | (718) 522–7900 |
| | | Fax: (877) 496–7809 |
| | | Email: ahmad@newyorkconsumerattorney.com |
| | | *ATTORNEY TO BE NOTICED* |

**V.**

**Defendant**

| | | |
|---|---|---|
| **Gutman Mintz Baker &Sonnenfeldt PC** | represented by | **Kenneth A. Novikoff** |
| | | Rivkin Radler, LLP |
| | | 926 Rexcorp Plaza |
| | | Uniondale, NY 11556 |
| | | 516–357–3110 |
| | | Fax: 516–357–3333 |
| | | Email: ken.novikoff@rivkin.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **1700 Development Co. (1500), Inc.** | represented by | **Kenneth A. Novikoff** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/30/2015 | 1 | **FILING ERROR – DEFICIENT PLEADING – FILED AGAINST PARTY ERROR** COMPLAINT against All Defendants. (Filing Fee $ 400.00, Receipt Number 0208–11680939)Document filed by Franklin Arias. (Attachments: # 1 Exhibit A – information subpoena and restraint, # 2 Exhibit B, # 3 Exhibit C – GMBS objection to exemption)(Keshavarz, Ahmad) Modified on 12/1/2015 (rch). (Entered: 11/30/2015) |

| 12/01/2015 | 2 | CIVIL COVER SHEET filed. (Keshavarz, Ahmad) (Entered: 12/01/2015) |
|---|---|---|
| 12/01/2015 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to Gutman, Mintz, Baker &Sonnenfeldt, P.C., re: 1 Complaint,. Document filed by Franklin Arias. (Keshavarz, Ahmad) (Entered: 12/01/2015) |
| 12/01/2015 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to 1700 Development Co. (1500), Inc., re: 1 Complaint,. Document filed by Franklin Arias. (Keshavarz, Ahmad) (Entered: 12/01/2015) |
| 12/01/2015 | | ***NOTICE TO ATTORNEY REGARDING CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Ahmad Keshavarz. The following case opening statistical information was erroneously selected/entered: County code Bronx. The following correction(s) have been made to your case entry: the County code has been modified to New York. (rch) (Entered: 12/01/2015) |
| 12/01/2015 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Ahmad Keshavarz to RE–FILE Document No. 1 Complaint. The filing is deficient for the following reason(s): the All Defendant radio button was selected. Re–file the pleading using the event type Complaint found under the event list Complaints and Other Initiating Documents – attach the correct signed PDF – select the individually named filer/filers – select the individually named party/parties the pleading is against. (rch) (Entered: 12/01/2015) |
| 12/01/2015 | 5 | ELECTRONIC SUMMONS ISSUED as to Gutman Mintz Baker &Sonnenfeldt PC. (rch) (Entered: 12/01/2015) |
| 12/01/2015 | 6 | ELECTRONIC SUMMONS ISSUED as to 1700 Development Co. (1500), Inc.. (rch) (Entered: 12/01/2015) |
| 12/01/2015 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above–entitled action is assigned to Judge George B. Daniels. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (rch) (Entered: 12/01/2015) |
| 12/01/2015 | | Magistrate Judge Andrew J. Peck is so designated. (rch) (Entered: 12/01/2015) |
| 12/01/2015 | | Case Designated ECF. (rch) (Entered: 12/01/2015) |
| 12/01/2015 | 7 | COMPLAINT against 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC. Document filed by Franklin Arias. (Attachments: # 1 Exhibit A, Restraining Notice, # 2 Exhibit B, Notice of Exemption, # 3 Exhibit C, GMBS Objection to Exemption)(Keshavarz, Ahmad) (Entered: 12/01/2015) |
| 12/08/2015 | 8 | INITIAL PRETRIAL CONFERENCE: An Initial pretrial conference will be held on Thursday, February 18, 2016 at 9:30 a.m. at the United States District Courthouse, 500 Pearl Street, New York, New York, Courtroom 11A. (As further set forth in this Order) Initial Conference set for 2/18/2016 at 09:30 AM in Courtroom 11A, 500 Pearl Street, New York, NY 10007 before Judge George B. Daniels. (Signed by Judge George B. Daniels on 12/7/2015) (kl) (Entered: 12/08/2015) |
| 01/11/2016 | 9 | SUMMONS RETURNED EXECUTED. Gutman Mintz Baker &Sonnenfeldt PC served on 12/11/2015, answer due 1/4/2016. Service was accepted by Nancy Dougherty an authorized agent in the Office of the Secretary of State, of the State of New York. Document filed by Franklin Arias. (Keshavarz, Ahmad) (Entered: 01/11/2016) |
| 01/11/2016 | 10 | SUMMONS RETURNED EXECUTED. 1700 Development Co. (1500), Inc. served on 12/11/2015, answer due 1/4/2016. Service was accepted by Nancy Dougherty, an authorized agent in the Office of the Secretary of the State, of the State of New York. Document filed by Franklin Arias. (Keshavarz, Ahmad) (Entered: 01/11/2016) |

| 01/12/2016 | [11](#) | NOTICE OF APPEARANCE by Susan Soojin Shin on behalf of Franklin Arias. (Shin, Susan) (Entered: 01/12/2016) |
|---|---|---|
| 02/01/2016 | [12](#) | ANSWER to [7](#) Complaint, with JURY DEMAND. Document filed by Gutman Mintz Baker &Sonnenfeldt PC.(Novikoff, Kenneth) (Entered: 02/01/2016) |
| 02/01/2016 | [13](#) | ANSWER to [7](#) Complaint, with JURY DEMAND. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC.(Novikoff, Kenneth) (Entered: 02/01/2016) |
| 02/10/2016 | [14](#) | LETTER MOTION to Stay *Discovery* addressed to Judge George B. Daniels from Kenneth A. Novikoff dated February 10, 2016. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC. (Attachments: # [1](#) Exhibit A – Transcript)(Novikoff, Kenneth) (Entered: 02/10/2016) |
| 02/17/2016 | [15](#) | LETTER RESPONSE in Opposition to Motion addressed to Judge George B. Daniels from Ahmad Keshavarz dated February 17, 2016 re: [14](#) LETTER MOTION to Stay *Discovery* addressed to Judge George B. Daniels from Kenneth A. Novikoff dated February 10, 2016. . Document filed by Franklin Arias. (Keshavarz, Ahmad) (Entered: 02/17/2016) |
| 02/18/2016 | | **Minute Entry for proceedings held before Judge George B. Daniels: Initial Pretrial Conference held on 2/18/2016.. The document was incorrectly filed in this case. (tro)** (Entered: 02/18/2016) |
| 02/18/2016 | | Minute Entry for proceedings held before Judge George B. Daniels: Initial Pretrial Conference held on 2/18/2016. Plaintiff Counsel: Ahmad Keshavarz; Defense Counsel: Kenneth A. Novikoff andCourt Reporter present. The oral argument is scheduled for March 23, 2016 at 10:30 a.m. (Vega, Elizabeth) (Entered: 02/18/2016) |
| 03/02/2016 | [16](#) | CONSENT LETTER addressed to Judge George B. Daniels from Ahmad Keshavarz dated 3/2/16 re: Extension of Briefing Schedule. Document filed by Franklin Arias.(Keshavarz, Ahmad) (Entered: 03/02/2016) |
| 03/02/2016 | [17](#) | AMENDED LETTER addressed to Judge George B. Daniels from Ahmad Keshavarz dated 3/2/16 re: Extension of Briefing Schedule (on Consent). Document filed by Franklin Arias.(Keshavarz, Ahmad) (Entered: 03/02/2016) |
| 03/04/2016 | [18](#) | MEMO ENDORSEMENT on re: [17](#) AMENDED LETTER addressed to Judge George B. Daniels from Ahmad Keshavarz dated 3/2/16 re: Extension of Briefing Schedule (on Consent). ENDORSEMENT: SO ORDERED. (Responses due by 3/8/2016. Replies due by 3/16/2016.) (Signed by Judge George B. Daniels on 3/4/2016) (adc) (Entered: 03/04/2016) |
| 03/08/2016 | [19](#) | TRANSCRIPT of Proceedings re: conference held on 2/18/2016 before Judge George B. Daniels. Court Reporter/Transcriber: Steven Griffing, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/1/2016. Redacted Transcript Deadline set for 4/11/2016. Release of Transcript Restriction set for 6/9/2016.(McGuirk, Kelly) (Entered: 03/08/2016) |
| 03/08/2016 | [20](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 2/18/16 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 03/08/2016) |
| 03/09/2016 | [21](#) | MEMORANDUM OF LAW in Opposition re: [14](#) LETTER MOTION to Stay *Discovery* addressed to Judge George B. Daniels from Kenneth A. Novikoff dated February 10, 2016. . Document filed by Franklin Arias. (Keshavarz, Ahmad) (Entered: 03/09/2016) |

| 03/09/2016 | 22 | DECLARATION of Ahmad Keshavarz in Opposition re: 14 LETTER MOTION to Stay *Discovery* addressed to Judge George B. Daniels from Kenneth A. Novikoff dated February 10, 2016.. Document filed by Franklin Arias. (Attachments: # 1 Exhibit A – Complaint, # 2 Exhibit B – Defendant letter motion, # 3 Exhibit C – Plaintiff letter opposition for pre–motion conference, # 4 Exhibit D – hearing transcript)(Keshavarz, Ahmad) (Entered: 03/09/2016) |
| --- | --- | --- |
| 03/11/2016 | 23 | LETTER MOTION for Leave to File Excess Pages addressed to Judge George B. Daniels from Kenneth A. Novikoff dated March 11, 2016. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC.(Novikoff, Kenneth) (Entered: 03/11/2016) |
| 03/11/2016 | 24 | ORDER granting 23 LETTER MOTION for Leave to File Excess Pages addressed to Judge George B. Daniels from Kenneth A. Novikoff dated March 11, 2016. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC. So ordered. (Signed by Judge George B. Daniels on 3/11/2016) (rjm) (Entered: 03/11/2016) |
| 03/14/2016 | 25 | LETTER MOTION for Extension of Time to File Response/Reply *Memorandum of Law* addressed to Judge George B. Daniels from Kenneth A. Novikoff, Esq. dated March 14, 2016. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC.(Novikoff, Kenneth) (Entered: 03/14/2016) |
| 03/15/2016 | 26 | ORDER granting 25 LETTER MOTION for Extension of Time to File Response/Reply Memorandum of Law addressed to Judge George B. Daniels from Kenneth A. Novikoff, Esq. dated March 14, 2016. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC. So ordered. Replies due by 3/21/2016. (Signed by Judge George B. Daniels on 3/15/2016) (rjm) (Entered: 03/15/2016) |
| 03/21/2016 | 27 | FIRST LETTER addressed to Judge George B. Daniels from Ahmad Keshavarz dated 3/21/2016 re: Joint Scheduling Order. Document filed by Franklin Arias. (Attachments: # 1 Text of Proposed Order Proposed Scheduling Order on Consent)(Keshavarz, Ahmad) (Entered: 03/21/2016) |
| 03/21/2016 | 28 | SECOND LETTER MOTION for Extension of Time to File Response/Reply as to 26 Order on Motion for Extension of Time to File Response/Reply, addressed to Judge George B. Daniels from Kenneth A. Novikoff dated 3/21/16. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC. Return Date set for 3/22/2016 at 12:00 PM.(Novikoff, Kenneth) (Entered: 03/21/2016) |
| 03/22/2016 | 29 | REPLY MEMORANDUM OF LAW in Support re: 14 LETTER MOTION to Stay *Discovery* addressed to Judge George B. Daniels from Kenneth A. Novikoff dated February 10, 2016. . Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC. (Novikoff, Kenneth) (Entered: 03/22/2016) |
| 03/22/2016 | 30 | ORDER granting 28 Letter Motion for Extension of Time to File Response/Reply. So ordered. Replies due by 3/22/2016. (Signed by Judge George B. Daniels on 3/22/2016) (lmb) (Entered: 03/22/2016) |
| 03/22/2016 | 31 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: An Initial pretrial conference will be held on Thursday, February 18, 2016 at 9:30 a.m. at the United States District Courthouse, 500 Pearl Street, New York, New York, Courtroom 11A. The estimated trial time is 4 days and this is a jury trial. Amended Pleadings due by 5/12/2016. Joinder of Parties due by 5/12/2016. Discovery due by 8/31/2016. Case Management Conference set for 6/9/2016 at 09:45 AM before Judge George B. Daniels. Final Pretrial Conference set for 9/22/2016 at 09:45 AM before Judge George B. Daniels. Pretrial Order due by 9/15/2016. Ready for Trial by 10/13/2016. (Signed by Judge George B. Daniels on 3/22/2016) (lmb) (Entered: 03/22/2016) |
| 03/23/2016 | | Minute Entry for proceedings held before Judge George B. Daniels: Oral Argument held on 3/23/2016 re: 14 LETTER MOTION to Stay *Discovery* addressed to Judge George B. Daniels from Kenneth A. Novikoff dated February 10, 2016. filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC. Plaintiff Counsel: Susan Soojin Shin, Ahmad Keshavarz; Defense Counsel: |

| | | |
|---|---|---|
| | | Kenneth A. Novikoff. The subsequent conference is scheduled for June 9, 2016 at 9:45 a.m. (Vega, Elizabeth) (Entered: 03/23/2016) |
| 03/31/2016 | 32 | LETTER addressed to Judge George B. Daniels from Kenneth A. Novikoff dated March 30, 2016 re: Rule 12(c) motion. Document filed by 1700 Development Co. (1500), Inc., Gutman Mintz Baker &Sonnenfeldt PC.(Novikoff, Kenneth) (Entered: 03/31/2016) |
| 04/01/2016 | 33 | LETTER RESPONSE in Opposition to Motion addressed to Judge George B. Daniels from Ahmad Keshavarz dated April 1, 2016 re: 14 LETTER MOTION to Stay *Discovery* addressed to Judge George B. Daniels from Kenneth A. Novikoff dated February 10, 2016. *response to DE 32, Defendant's unauthorized Sur–Reply*. Document filed by Franklin Arias. (Keshavarz, Ahmad) (Entered: 04/01/2016) |
| 04/05/2016 | 34 | TRANSCRIPT of Proceedings re: MOTION held on 3/23/2016 before Judge George B. Daniels. Court Reporter/Transcriber: Thomas Murray, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/29/2016. Redacted Transcript Deadline set for 5/9/2016. Release of Transcript Restriction set for 7/8/2016.(McGuirk, Kelly) (Entered: 04/05/2016) |
| 04/05/2016 | 35 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a MOTION proceeding held on 3/23/16 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 04/05/2016) |
| 06/08/2016 | 36 | MEMORANDUM DECISION AND ORDER: The Defendants' motion for judgment on the pleadings with respect to the FDCPA cause of action against GMBS is GRANTED. This Court declines to exercise supplemental jurisdiction over Arias's remaining state law claims, and therefore dismisses those causes of action without prejudice. The Clerk of Court is directed to close the above–captioned action. SO ORDERED. (Signed by Judge George B. Daniels on 6/08/2016) (ama) (Entered: 06/08/2016) |
| 06/08/2016 | | Transmission to Judgments and Orders Clerk. Transmitted re: 36 Order,, to the Judgments and Orders Clerk. (ama) (Entered: 06/08/2016) |
| 06/08/2016 | 37 | CLERK'S JUDGMENT: That for the reasons set forth in the Court's Memorandum Decision and Order dated June 8, 2016, the Defendants' motion for judgment on the pleadings is granted; this Court declines to exercise supplemental jurisdiction over Arias's remaining state law claims, and therefore, those causes of action are therefore dismissed without prejudice; accordingly, the above–captioned action is closed. (Signed by Clerk of Court Ruby Krajick on 6/8/2016) (Attachments: # 1 Notice of Right to Appeal, # 2 Notice of Right to Appeal)(dt) (Entered: 06/08/2016) |
| 06/08/2016 | | Terminate Transcript Deadlines (dt) (Entered: 06/08/2016) |
| 06/24/2016 | 38 | NOTICE OF APPEAL from 37 Clerk's Judgment,, 36 Order,. Document filed by Franklin Arias. Filing fee $ 505.00, receipt number 0208–12462675. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Keshavarz, Ahmad) (Entered: 06/24/2016) |
| 06/24/2016 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 38 Notice of Appeal. (tp) (Entered: 06/24/2016) |
| 06/24/2016 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 38 Notice of Appeal, filed by Franklin Arias were transmitted to the U.S. Court of Appeals. (tp) (Entered: 06/24/2016) |

(4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FRANKLIN ARIAS                                     :

                           Plaintiff,             :

         -against-                                 :                    <u>MEMORANDUM DECISION</u>
                                                   :                    <u>AND ORDER</u>

GUTMAN, MINTZ, BAKER & SONNENFELDT,:
P.C.; 1700 DEVELOPMENT CO. (1500), Inc.            :                    15-cv-09388 (GBD)
                                                   :
                           Defendants.            :
                                                   :
                                                   :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GEORGE B. DANIELS, United States District Judge:

On December 1, 2015,[1] Plaintiff Franklin Arias filed this action against Defendant

Gutman, Mintz, Baker & Sonnenfeldt, P.C. ("GMBS"), a debt collection law firm, for violations

of the Fair Debt Collection Practices Act ("FDCPA"), New York State General Business Law

Section 349, New York State Judiciary Law Section 487, and common law conversion, and against

Defendant 1700 Development Co. (1500), Inc. ("1700 Development"), the putative creditor in the

underlying collection lawsuit, for common law conversion only. (Complaint, (ECF No. 7), at 1,

13-19.) Pending before this Court is Defendants' Federal Rule of Civil Procedure 12(c) motion

for judgment on the pleadings with respect to the FDCPA cause of action against GMBS, and if

granted, request that this Court decline supplemental jurisdiction over and dismiss without

prejudice the remaining state law claims.[2]

---

[1] Arias initially filed a complaint on November 30, 2015, (*see* ECF No. 1), but it contained filing errors
which were corrected the next day.

[2] Defendants initially filed a letter motion for a stay of discovery pending an anticipated Rule 12(c) motion
for judgment on the pleadings. (Letter Motion, (ECF No. 14), at 1.) Defendants later represented that the

## I.    Background

In 2006, Arias leased and lived in an apartment owned by 1700 Development.  (Complaint at ¶ 9.)  That same year, Arias moved out of the apartment and his daughter moved in.  (*Id.* at ¶ 10.)  Arias alleges that his daughter was supposed to pay the rent, but failed to pay two months' worth.  (*Id.*)

Later that same year, GMBS, on behalf of 1700 Development, sued Arias for a breach of the lease agreement in Bronx County Civil Court.  (*Id.* at ¶ 12.)  Arias alleges that he was not served with the collection lawsuit, and consequently did not file an answer.  (*Id.* at ¶¶ 13-14.)  As a result, on or about September 28, 2006, GMBS, on behalf of 1700 Development, obtained a default judgment against Arias for $4,656.15.[3]  (*Id.* at ¶ 15.)

Approximately eight years later, on or about December 1, 2014, GMBS initiated an attempt to execute on the judgment by issuing an "Information Subpoena With Restraining Notice" to Bank of America, where Arias maintained a checking account.[4]  (*Id.* at ¶ 16.)  Consistent with New York State law, GMBS included an Exemption Notice and two Exemption Claim Forms for Bank of America to forward to Arias in the event it determined that funds in Arias's acccount

---

letter itself would serve as their motion for judgment on the pleadings. (Initial Conference Transcript, (ECF No. 19), at 11:3-12:12.)

[3] Arias does not allege that he was not liable for the amount awarded in the default judgment; to the contrary, he appears to concede he owed the debt by pleading that two months' worth of rent was never paid.

[4] Under New York law, an attorney for a judgment creditor may serve an information subpoena on a financial institution to determine whether a judgment debtor has assets at the institution which might satisfy the judgment. *See* N.Y. CPLR 5224.  The attorney may serve a restraining notice along with the information subpoena to prevent the institution or judgment debtor from removing or transferring property held by the institution which could be used to satisfy the judgment. *See* N.Y. CPLR 5222.  The judgment debtor must be provided an opportunity to show that the property being restrained or seized is exempt from seizure. *See* N.Y. CPLR 5222-a.  If the judgment debtor is successful, the restraint will be lifted; if not, the judgment creditor may obtain an order directing the institution to turn over the judgment debtor's property to satisfy the judgment. *See id.*; N.Y. CPLR 5225; *N. Shore Univ. Hosp. at Plainview v. Citibank Legal Serv. Intake Unit*, 25 Misc. 3d 655, 883 N.Y.S.2d 898 (Dist. Ct. 2009).

could be used to satisfy the outstanding judgment.  (*See* Complaint Exhibit A ("Exh. A"), (ECF No. 7-1), at 1.)

The Exemption Notice, the language of which is set forth by statute, provides information to recipient judgment debtors in layperson language regarding the restraint against their account and the exempt status of certain kinds of funds.  *See* N.Y. CPLR 5222-a(b)4.  Although the Exemption Notice states that an attorney is not needed to make an exemption claim using the attached Exemption Claim Form, it also notifies the recipient judgment debtor that he may wish to "CONSULT AN ATTORNEY (INCLUDING FREE LEGAL SERVICES) OR VISIT THE COURT CLERK FOR MORE INFORMATION" about the judgment against him.  (Exh. A at 2; N.Y. CPLR 5222-a(b)4.  The statutorily prescribed Exemption Claim Form included with the Exemption Notice provides directions to the judgment debtor regarding how to submit the form; it also states: "**If you have any documents, such as an award letter, an annual statement from your pension, paystubs, copies of checks or bank records showing the last two months of account activity, include copies of the documents with this form.  Your account <u>may</u> be released more quickly."[5]  (Exh. A at 2 (emphasis added); *see also* N.Y. CPLR 5222-a(b)4).)

Bank of America received the restraining notice on December 5, 2014.  (Complaint at ¶ 45.)  At that time, Arias's account had a balance of $4,019.62.  (Complaint Exhibit B ("Exh. B"), (ECF No. 7-2), at 1.)  Bank of America determined that of this amount, $2,625.00 was Federal

---

[5] Although the Exemption Claim Form indicates that submitting proof that the funds are exempt "may" result in the funds being released more quickly, the Exemption Notice states: "If you send the creditor's attorney proof that the money in your account is exempt, the attorney <u>must</u> release that money within seven days."  N.Y. CPLR 5222-a(b)4 (emphasis added).  Although this statement technically is accurate, *see* N.Y. CPLR 5222-a(c)4, the statutory scheme allows the judgment creditor to object to the proof provided, in which case the funds will not be released within seven days, *see* N.Y. CPLR 5222-a(d).  The conditional phrasing provided in the Exemption Claim Form appears to more accurately reflect the reality that submission of the Exemption Claim Form and accompanying documentation may—but will not necessarily—result in the removal of the restraint, and that additional action may be necessary.

benefits payments (*e.g.*, Social Security Retirement Income ("SSRI")), and was therefore exempt or "protected" from the restraint.  (*See id.*; N.Y. CPLR 5222-a.)

That same day, Bank of America heeded GMBS's instructions and sent Arias the Exemption Notice and Exemption Claim Forms.  (Complaint at ¶ 46.)  In addition, Bank of America included its own letter informing Arias of the restraint on his account. (Exh. B at 1.)  The letter made clear to Arias that he retained access to the "protected amount" (*i.e.*, $2,625.00), could use that money as he normally would, and that "[t]here [wa]s nothing else that [he] need[ed] to do to make sure that th[is] 'protected amount' [wa]s safe."  (*Id.* at 2 (emphasis omitted).)  The letter also informed Arias that the remaining $1,294.62 might also be exempt from the restraint if these funds were also Federal benefit payments.  (*Id.* at 2.)  The letter stated that if Arias believed that all or part of the unprotected amount was Federal benefit payments, he could: (1) fill out and submit an Exemption Claim Form that the bank included with the letter; (2) contact GMBS directly to try and persuade it to remove the restraint; and/or (3) consult an attorney to help prove the unprotected funds were also exempt from the restraint and could not be garnished by GMBS.  (*Id.*) With regard to the third option, the letter also stated: "If you can't afford an attorney, you can seek assistance from a free attorney or a legal aid society.  You can find information about free legal aid programs at http://www.lawhelp.org."  (*Id.*)

On or about December 15, 2014, Arias received Bank of America's mailing including its letter, the Exemption Notice, and Exemption Claim Form.  (Complaint at ¶ 48; Exh. B.)  Upon receipt, Arias went to a local Bank of America branch to ask a representative to contact GMBS to inform it that the only funds in his account were, in fact, SSRI, and that the unprotected balance in his account should be released from the restraint.  (Complaint at ¶ 48.)  Through Bank of America,

Arias faxed bank statements to GMBS purportedly documenting that his account contained only exempt SSRI funds.[6]  (*Id.* at ¶ 49.)

Later that day, Arias called GMBS to let it know about the faxed bank statements. (*Id.* at ¶ 50.)  According to the Complaint, someone at GMBS told Arias that "he owed the debt and that GMBS would remove the restraint only if Mr. Arias sent them a payment." (*Id.* at ¶ 51.)  Arias responded "that he could not afford to make a payment," to which GMBS responded that Arias "would have to go to court to attempt to remove that [sic] restraint." (*Id.* at ¶¶ 52-53.)

Notwithstanding this conversation, on December 19, 2014, Arias mailed to GMBS a completed Exemption Claim Form indicating that the unprotected amount was SSRI. (*Id.* at ¶ 59.) With the mailing, Arias included a bank statement dated December 12, 2014, which listed eleven monthly SSRI deposits, dating back to February 3, 2014, each in the amount of $785.00, as support for the representation he made in the Exemption Claim Form.[7]  (Exh. B at 6-7.)  The bank statement, however, was not certified, notarized or otherwise authenticated.  Additionally, although there were thirteen withdrawals totaling $1,062.00, none of the withdrawals appeared individually, nor did the statement provide the account's "available balance" after each transaction. (*Id.*)

On December 22, 2014, pursuant to the procedures outlined in CPLR 5222-a, GMBS filed an objection to Arias's exemption claim in Bronx County Civil Court. (*See* Complaint at ¶ 60; Complaint, Exhibit C ("Exh. C"), (ECF No. 7-3), at 7.)  GMBS's objection attached Arias's executed Exemption Claim Form as well as the accompanying bank statement that Arias had

---

[6] Arias did not attach the documents he allegedly faxed to GMBS to his Complaint.

[7] Upon information and belief, the Complaint alleges that this is one of the documents that Arias initially faxed to GMBS four days earlier. (*Compare id.* at ¶¶ 49-50, 80 (indicating that Arias faxed and mailed more than one bank statement), *with* Exh. B (attaching a single bank statement).)

submitted to it.  (Exh. C at 14-16.)  GMBS objected to Arias's claim that the remaining funds in

his account were exempt from restraint and eventual garnishment because, according to GMBS,

"the commingling of personal funds with exempt funds transforms the opening balance into

personal and non-exempt monies."  (*Id.* at 6 (quoting "*Zappia v. Maher*, N.Y.L.J. 3/12/03, p. 21,

col. 6 (Civ. Ct. Nassau Cty. 2003)").)  GMBS's objection further explained that because the bank

statement that Arias had submitted did not start from a zero balance, and because Arias failed to

provide documentation demonstrating that he never commingled exempt funds with non-exempt

funds, GMBS could not determine whether the funds in his account were exempt from restraint

and garnishment.  (*Id.* at 6-7.)

GMBS also objected to Arias's claim of exemption on the ground that Bank of America

had restrained only a portion of the funds in Arias's account, and had these funds been exempt, it

would not have restrained them, either.  (*Id.* at 7.)  GMBS's objection requested that the court

release the restrained funds in Arias's account to GMBS, or, in the alternative, issue a protective

order over the restrained account and hold a hearing on January 6, 2015 at 9:30 AM at 851 Grand

Concourse, Bronx, NY 10451, Room 503, Part 34, to determine the exemption status of the funds.

(*Id.* at 1, 7-8.)

On January 6, 2015, Arias appeared *pro se* at the Bronx County Civil Court hearing.

(Complaint at ¶ 76.)  (*Id.*)  At the hearing, Arias told the presiding judge that the unprotected

income in his account was SSRI, and that it was therefore exempt from restraint and garnishment.

(*Id.* at ¶ 77.)  At that point, the GMBS attorney asked Arias to step into the hall to discuss the case.

(*Id.* at ¶ 78.)  Once in the hallway, the attorney asked Arias to see the documents that purportedly

demonstrated the funds in his account were exempt from the restraint.  (*Id.* at ¶ 79.)  Upon

information and belief, the Complaint alleges that Arias presented the same bank statements in the

hallway that he had Bank of America fax to GMBS on December 15, 2014, and that he mailed to GMBS along with the Exemption Claim Form on December 19, 2014.[8]  (*Id.* at ¶ 80.)  After looking at the documents, the GMBS attorney and Arias returned to the courtroom, at which time GMBS withdrew its motion and stipulated to release all restrained funds.  (*Id.* at ¶ 81.)

On December 1, 2015, Arias filed the above-captioned action, alleging, *inter alia*, violations of the FDCPA under 15 U.S.C. §§ 1692e and 1692f.  (*Id.* at ¶¶ 87-94.)  The Complaint contends that GMBS should have released the restraint on his funds after initially receiving the bank statement via fax and mail or, at the very least, no later than when it received his Exemption Claim Form and bank statement.  He argues that GMBS's subsequent withdrawal of its motion after reviewing the bank statement in the courthouse hallway demonstrates that the statement submission sufficiently proved the funds in Arias's account were, in fact, exempt.  (*Id.*)  Instead, the Complaint alleges that even though "GMBS had no good-faith basis for objecting to the exemption claim," it nonetheless objected to Arias's claim of exemption "in order to abuse and intimidate Mr. Arias into agreeing to send them payments from his exempt funds, or in hopes that Mr. Arias would default at the hearing on the exemption objection."  (*Id.* at ¶ 61; *see also id.* at ¶ 86.)

Defendants now move for judgment on the pleadings with regard to the FDCPA cause of action against GMBS.  They argue that FDCPA liability should not lie because GMBS's objection to Arias's claim of exemption was filed in accordance with the procedures set forth in CPLR 5222-a.  According to Defendants, GMBS merely sought to "exercis[e] its client's legislatively enacted statutory right thereunder to avail itself of the opportunity to challenge through motion practice and cross-examination . . . [Arias's] claim of exemption and the purported documentary proof

---

[8] *See supra* note 7.

submitted by [him in] support thereof." (Defendants' Reply Memorandum of Law in Support of their Fed.P[sic].Civ.P.12(c) Motion Dismissing Plaintiff's Complaint, (ECF No. 29), at 4.) Additionally, Defendants argue that even if the bank statement had sufficiently demonstrated the exempt status of Arias's funds to warrant an instruction from GMBS to Bank of America to release the restraint, CPLR 5222-a provides judgment debtors with legal remedies directly targeting the conduct of which Arias complains, and that imposing FDCPA liability in this instance would therefore be superfluous. Finally, Defendants argue that Arias's claim under § 1692e fails because no purported misrepresentation made by GMBS was material.

## II.    Standard of Review

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is reviewed according to the same standard as a motion to dismiss a complaint. *See Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam). Accordingly, when reviewing a Rule 12(c) motion, a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor. To survive . . ., [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 43-44 (internal citation and quotation marks omitted). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

## III.    The Instant Motion

The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect consumers against

debt collection abuses." 15 U.S.C. § 1692. The statute targets "collection abuses such as use of

'obscene or profane language, threats of violence, telephone calls at unreasonable hours,

misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends,

neighbors, or an employer, obtaining information about a consumer through false pretence,

impersonating public officials and attorneys and simulating legal process.'" *See Kropelnicki v.*

*Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S.Rep. No. 95–382, at 2 (1977), *reprinted in*

1977 U.S.C.C.A.N. 1695, 1696).

Likewise, New York State has enacted legislation to protect debtors from certain debt-

collector conduct. The present litigation in large part rests on the relationship between the FDCPA

and one particular New York State statute: CPLR 5222-a.

> CPLR 5222-a was enacted as part of the Exempt Income Protection
> Act of 2008 (EIPA). The purpose of this legislation was to insure
> that sources of income that are exempt from judgment enforcement
> were not restrained or seized in enforcement of judgments. To meet
> this purpose, the EIPA provides for a method by which a judgment
> debtor would be advised that certain sources of income were exempt
> from execution, a method to claim the exemption[, a procedure for
> the judgment creditor to object to any claimed exemption,] and a
> procedure by which the court in which the judgment was entered
> would expeditiously determine the validity of the claimed
> exemption. (*See* Bill Jacket, L 2008, ch 575.) . . . .

*Midland Funding LLC v. Singleton*, 34 Misc. 3d 798, 800, 935 N.Y.S.2d 844 (Dist. Ct. 2011)

("*Midland I*"). Additionally, CPLR 5222-a provides that if a judgment creditor objects to a

judgment debtor's claimed exemption in bad faith, the judgment debtor shall be awarded costs,

reasonable attorney's fees, actual damages and an amount not to exceed $1,000. N.Y. C.P.L.R.

5222-a(g). Subject to the speed with which the judgment debtor claims an exemption, the entire

dispute will usually be resolved within one or two months after the initial imposition of the restraint.[9]

   A. *GMBS is Not Liable under § 1692e*

   Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. However, "not every technically false representation by a debt collector amounts to a violation of the FDCPA." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Courts generally require such falsehoods, deceptions or misrepresentations to be material. *See id.* (citing with approval several sister circuits and district courts within this circuit reading a materiality requirement into § 1692e). Misrepresentations are material if they would "mislead a putative-debtor as to the nature and legal status of the underlying debt, or [would] impede a consumer's ability to respond to or dispute collection . . . ." *Gabriele*, 503 F. App'x at 94. Furthermore, although a communication is evaluated according to how the "least sophisticated consumer" would understand it, the least sophisticated consumer is "neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Accordingly, some courts within this circuit have held that "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (citation omitted).

   Arias alleges that GMBS's representations—that (1) "the commingling of personal funds with exempt funds transforms the opening balance into personal and non-exempt monies," and

---

[9] Indeed, in the instant case, Bank of America imposed the partial restraint on Arias's account on December 5, 2014, and the restraint was voluntarily withdrawn by GMBS on January 6, 2014. Even if GMBS had not voluntarily withdrawn the restraint, the court was obligated to decide whether Arias's funds were exempt from the restraint by January 11, 2014. *See* N.Y. CPLR 5222-a(d).

that (2) Arias therefore needed to provide a bank statement from a zero balance in order for GMBS to be able to determine whether Arias's claim of exemption was legitimate—were legally false. (Complaint at ¶¶ 64, 64 n.2, 65, 67, 75a-c.) Arias contends that these legally false statements misrepresented "to the least sophisticated consumer that that [sic] the burden is on the consumer to provide certain documentation when in fact the burden is on the debt collector . . . to demonstrate a reasonable belief that such judgment debtor's account contains funds that are not exempt from execution . . . ." (*Id.* at ¶ 71 (internal quotation marks omitted).)

As an initial matter, GMBS's representation that a judgment debtor must provide documentary proof to sufficiently demonstrate the exempt status of restrained funds was not a *mis*representation because New York courts have imposed such a burden. As at least one court has explained, "the [New York State] legislature, when enacting EIPA, could not possibly have intended to permit a person to obtain an exemption simply by checking a box on the exemption claim form, signing that form and timely mailing it back to the judgment creditor's attorney." *Midland Funding LLC v. Singleton* ("*Midland II*"), 35 Misc. 3d 410, 416, 943 N.Y.S.2d 373 (Dist. Ct. 2012). Thus, notwithstanding CPLR 5222-a(d)'s prescription that an executed Exemption Claim Form is prima facie evidence of an exemption, a judgment creditor is entitled to challenge a judgment debtor's claim of exemption, especially if unaccompanied by documentary proof. *See Midland I*, 34 Misc.3d at 802, 935 N.Y.S.2d 844. Indeed, this is the rationale underlying the objection process outlined in CPLR 5222-a(d). *See id.* at 805, 935 N.Y.S.2d 844 (stating "the judgment creditor is entitled to the opportunity to question the judgment debtor as to source of the funds claimed to be exempt" because "[f]undamental fairness and basic due process require the judgment creditor be provided with some method for meaningfully contesting the judgment debtor's claim the funds on deposit in an account are exempt from execution"). Accordingly,

Arias's allegation that GMBS misrepresented that the burden is on the judgment debtor to provide sufficient documentary proof of the claimed exemption is itself incorrect.

However, Arias may be correct that under New York law commingling exempt and non-exempt funds does not impact whether funds initially exempt from restraint remain exempt; he also may be correct that there is no requirement that a judgment debtor provide account statements starting from a zero balance to establish that exempt and non-exempt funds have not been commingled. Even so, given the circumstances, such misrepresentations were not material, and therefore cannot provide a basis on which to impose FDCPA liability.

Arias's underlying debt was previously established by default judgment, the validity of which he does not dispute. GMBS's alleged misrepresentations do not relate to the nature nor legal status of Arias's underlying debt, and therefore are not "material" on this basis. *See Gabriele*, 503 F. App'x at 94.

Nor would GMBS's alleged misrepresentations impede the least sophisticated consumer's ability to respond to or dispute collection. First, GMBS's objection explicitly requested a court hearing at a particular date, time, and location to determine the exempt status of the remaining funds in Arias's account.[10] The hearing request date was set for less than three weeks after Arias had mailed the Exemption Claim Form and bank statement to GMBS. Given the expedience of the hearing request, the objection encouraged, rather than impeded, the least sophisticated consumer's ability to further respond to and dispute collection, notwithstanding the misrepresentations alleged. Furthermore, any minimal impact that GMBS's legal

---

[10] Although GMBS's objection in the first instance requested a judicial order deeming the funds non-exempt based on its submission, such a request would not impact the least sophisticated consumer's ability to respond to or dispute collection in the event this primary form of relief was not granted. Indeed, the denial of such a request and setting of a hearing would signal, even to the least sophisticated consumer, that GMBS's objections, on their face, were non-dispositive.

misrepresentations might have had was mitigated by the information—including information about how to procure free legal representation—that was forwarded to Arias when the restraint was imposed.

Second, Arias alleged that he never commingled non-exempt and exempt funds. (Complaint at ¶¶ 19, 42, 49-50, 77.)   Accordingly, GMBS's alleged misstatement that commingling non-exempt and exempt funds would result in previously exempt funds becoming non-exempt would not materially impact the least sophisticated consumer's ability to respond to or dispute GMBS's collection efforts.  In light of the facts known, even the least sophisticated consumer would realize the alleged misstatement would be an insufficient ground to allow GMBS to garnish such funds. *See DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F. App'x 7, 9-10 (2d Cir. 2015) (suggesting without deciding that background facts relating to the ongoing dispute—as opposed to facts related to debtor's background, financial circumstances, or sophistication—may be considered when applying least-sophisticated-consumer test).  Perhaps if exempt and non-exempt funds had been commingled, GMBS's misstatement could be deemed material.  But those are not the facts alleged.

### B.  GMBS is Not Liable under § 1692f

Arias also alleges that GMBS violated § 1692f, which makes illegal the use of "unfair or unconscionable means" to collect a debt.  15 U.S.C. § 1692f.  Specifically, Arias alleges that GMBS's conduct was unfair or unconscionable because GMBS should have released the restraint after Arias told a representative over the phone and sent documents by fax that his account contained solely exempt funds.  In short, he alleges that he should not have had to go to court to oppose GMBS's objection.  (Complaint at ¶¶ 54-58.)

FDCPA liability is strictly imposed because the abusive nature of a debt collector's conduct does not turn on the collector's intent, but rather on the effect such conduct has on the person from whom collection is sought.  The imposition that a wrongfully imposed restraint or eventually overruled objection to a claimed exemption has on a judgment debtor is identical regardless of whether the restraint and subsequent objection were filed in good faith.  In enacting CPLR 5222-a, the New York State legislature set forth an expedited process to determine the exempt status of funds that could potentially satisfy an enforceable money judgment.  A debt collector and its attorney do not engage in "unfair or unconscionable" conduct when they have objectively complied with New York State's legislatively prescribed process regardless of the motivation driving the collector's objectively compliant conduct.

Arias's claim that GMBS had no good faith basis to maintain the restraint on his account or file its objection after he provided his bank statement is insufficient, standing alone, to establish grounds for imposing FDCPA liability because GMBS complied with the procedures outlined in CPLR 5222-a.  GMBS provided Bank of America with the statutorily required Exemption Notice and Exemption Claim Forms and notified Bank of America that it had an obligation to forward these materials to Arias within two days of imposing any restraint.  Once Arias filed the Exemption Claim Form and accompanying bank statement, GMBS filed its objection within the statutorily authorized period.  GMBS's objection proposed a date, time and location for a hearing to determine the exempt status of the funds in Arias's account, and served Arias with this objection so that he could present argument regarding why he believed the funds in his account were in fact exempt.  Arias in fact was not impeded from responding to or disputing collection since he appeared at the hearing.  Such conduct cannot be deemed unfair or unconscionable simply because GMBS

allegedly acted in bad faith, since the impact of such conduct on Arias would have been identical even if GMBS had acted in good faith.

Additionally, Arias's allegation explaining why GMBS allegedly acted in bad faith—*i.e.*, "to abuse and intimidate Mr. Arias into agreeing to send them payments from his exempt funds, or in hopes that Mr. Arias would default at the hearing on the exemption objection"—is unsupported and implausible. At no point did GMBS ever initiate direct contact with Arias in an attempt to procure payment. Instead, Arias contacted GMBS. At the time Arias contacted GMBS, GMBS was under no obligation to release the restraint; CPLR 5222-a(d) provides a judgment creditor eight days after receiving an executed Exemption Claim Form to decide whether to object to a claimed exemption. When GMBS was contacted by Arias, he had not yet even submitted his Exemption Claim Form. Given these circumstances, GMBS's statement that Arias could make a payment or appear in court to dispute the partial restraint on his account was not inconsistent with the process designated by New York State, nor was it unfair or unconscionable under the FDCPA. Furthermore, GMBS attached to its objection both Arias's completed Exemption Claim Form and Arias's bank statement purporting to prove unequivocally that the funds in Arias's account were exempt. If, as Arias alleges, the bank statement was dispositive of this issue, Arias's failure to appear at the scheduled hearing would have been inconsequential since the Exemption Claim Form and bank statement *ipso facto* would have been sufficient to establish the exempt status of his funds.

Finally, it is worth noting that CPLR 5222-a(g) explicitly creates a cause of action for the conduct about which Arias complains—*i.e.*, the bad-faith maintenance of a restraint and filing of an objection to a claimed exemption. *See Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91-92 (2d Cir. 2016) (suggesting that whether another statute explicitly creates a cause of action

for its violation may be applicable to the determination of whether the FDCPA provides a cause of action).[11]  Imposing liability under the FDCPA is not necessary when a state statutory scheme already provides substantive protection from a specific type of conduct.  *See Lautman v. 2800 Coyle Street Owners Corp.*, No. 14-cv-1868, 2014 WL 4843947, at \*12 (E.D.N.Y. Sept. 26, 2014) ("Imposing FDCPA liability is not necessary to serve the statute's purpose of protecting consumers, since plaintiff could have, and did, seek redress through the court system.").  Simply stiffening the penalty New York State already has decided is appropriate for violations of its statutory scheme does nothing to serve the purposes for which the FDCPA was enacted.

### C.  Court Declines to Exercise Supplemental Jurisdiction

In addition to the FDCPA cause of action, Arias alleged three state-law causes of action, namely violations of New York State General Business Law Section 349, New York State Judiciary Law Section 487, and common law conversion.  This Court only has subject-matter jurisdiction over these additional claims by virtue of 28 U.S.C. § 1367, which allows a federal court to exercise supplemental jurisdiction over state-law claims.  Section 1367(c)(3) provides that, where a court dismisses "all claims over which it has original jurisdiction," the court may, in its discretion, decline to exercise supplemental jurisdiction over pendent state-law claims.  28 U.S.C. § 1367(c)(3).  Further, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims."  *Pension Ben. Guar. Corp. ex rel. St. Vincent*

---

[11] Of course, this is not to say that a debt collector could not engage in conduct that violates both CPLR 5222-a(g) and the FDCPA, since "statements . . . and actions taken in furtherance of a legal action are not, in and of themselves exempt from liability under the FDCPA . . . ."  *Gabriele*, 502 F. App'x at 95 (citing *Goldman v. Cohen*, 445 F.3d 152, 157 (2d Cir. 2006)).

*Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (internal citations and quotation marks omitted).

This particular case is in its early stages. At this point, only a minimal amount of discovery has taken place. (Argument Transcript dated March 23, 2016, (ECF No. 34), at 86:17-87:19, 88:13-20, 91:13-92:7.) Additionally, the state causes of action are largely dependent upon an adjudication of whether GMBS complied with CPLR 5222-a, which is a determination that is best left to a state court. Given the early stage of litigation and principles of comity, this Court declines to exercise supplemental jurisdiction over Arias's remaining state-law claims against the Defendants.

## IV.    Conclusion

The Defendants' motion for judgment on the pleadings with respect to the FDCPA cause of action against GMBS is GRANTED. This Court declines to exercise supplemental jurisdiction over Arias's remaining state law claims, and therefore dismisses those causes of action without prejudice.

The Clerk of Court is directed to close the above-captioned action.


Dated: June 8, 2016
      New York, New York


                                                        SO ORDERED:

                                                        *George B. Daniels*
                                                        GEORGE B. DANIELS
                                                        United States District Judge

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 6/8/2016             │
└─────────────────────────────────┘
```

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

FRANKLIN ARIAS,

Plaintiff,

15-cv-09388 (GBD)

-against-

**JUDGMENT**

GUTMAN, MINTZ, BAKER & SONNENFELDT,
P.C.; 1700 DEVELOPMENT CO. (1500), Inc.,

Defendant.

-------------------------------------------------------------X

    Pending before this Court is Defendants' Federal Rule of Civil Procedure 12 (c) motion for judgment on the pleadings with respect to the FDCPA cause of action against GMBS, and if granted, requests that this Court decline supplemental jurisdiction over and dismiss without prejudice the remaining state law claims, and the matter having come before the Honorable George B. Daniels, United States District Judge, and the Court thereafter, on June 8, 2016 having rendered its Memorandum Decision and Order granting Defendants' motion for judgment on the pleadings with respect to the FDCPA cause of action against GMBS; this Court declines to exercise supplemental jurisdiction over Arias's remaining state law claims, and therefore dismisses those causes of action without prejudice, and directing the Clerk of Court to close the above-captioned action, it is,

    **ORDERED, ADJUDGED AND DECREED:**   That for the reasons set forth in the Court's Memorandum Decision and Order dated June 8, 2016, the Defendants' motion for judgment on the pleadings is granted; this Court declines to exercise supplemental jurisdiction over Arias's remaining state law claims, and therefore, those causes of action are therefore dismissed without prejudice; accordingly, the above-captioned action is closed.

**Dated:**  New York, New York
       June 8, 2016

**RUBY J. KRAJICK**

**Clerk of Court**

BY: _____

**Deputy Clerk**

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____**

G3nrarim

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   FRANKLIN ARIAS,

4                   Plaintiff,

5            v.                        15 Civ. 9388 (GBD)

6   GUTMAN MINTZ BAKER & SONNENFELDT
    P.C. and 1700 DEVELOPMENT CO.
7   (1500), INC.,
                                       Argument
8                   Defendants.

9   ------------------------------x

10                                     New York, N.Y.
                                       March 23, 2016
11                                     10:50 a.m.

12  Before:

13          HON. GEORGE B. DANIELS

14                                     District Judge

15

16

17

18
            APPEARANCES
19

20  AHMAD KESHAVARZ
        Attorney for Plaintiff
21

22  RIVKIN RADLER LLP
        Attorneys for Defendants
23  BY:  KENNETH A. NOVIKOFF

24

25

1          (Case called)

2          THE COURT:  Mr. Novikoff, why don't I hear you on your

3    motion.

4          MR. NOVIKOFF:  We move today pursuant to rule 12(c)

5    for dismissal on the pleadings.  As my initial letter motion

6    and papers set forth, we have two bases for dismissal.  One is

7    that courts are reluctant in the Second Circuit and in other

8    circuits to find FDCPA liability against lawyers who in a

9    certain context are considered to be debt collectors for action

10   or conduct undertaken in state court litigation.  We

11   acknowledge, and we have never taken the position otherwise,

12   that there is absolute immunity for counsel; however, there is

13   a strong reluctance, as the Lautman case and the Second Circuit

14   cases have identified.

15         The second basis for the rule 12(c) motion is that

16   even if the Court doesn't adopt and accept the reluctance of

17   courts within the Second Circuit or find that this case falls

18   within that general understanding, based upon the allegations

19   of the complaint, there was no material misrepresentation or

20   communication that was made by Gutman Mintz in their capacity

21   as counsel for defendant 1700 to the plaintiff.  In order for

22   there to be a finding of FDCPA violation, even though there is

23   not a materiality requirement within the statute, the Second

24   Circuit has interpreted and the courts within this circuit have

25   interpreted that there should be a materiality requirement.

G3nrarim

1    THE COURT:  Isn't a central issue whether or not the

2  defendant represented that the attachment, the seizure of his

3  bank account, was legally appropriate and that it was not

4  exempt under the statute; that a representation was made, and

5  isn't that a representation that was at least abandoned?

6    MR. NOVIKOFF:  It was withdrawn.  I think we all

7  understand, and I don't think there is any dispute, that there

8  was an underlying judgment; no issue there.  The restraint that

9  was filed on Bank of America was appropriate and procedurally

10 correct; no miscommunications or misrepresentations there.

11 Bank of America in the first instance communicated to plaintiff

12 and to us, Gutman Mintz, that some of the funds may not be

13 exempt; no issue there.

14    There are no issues that the plaintiff understood, and

15 this is why materiality is important, understood what his

16 rights and obligations and defenses were.  He was provided by

17 Gutman Mintz and the bank with an exempt form.  He signed it.

18 He understood that he could send additional documentation to

19 try to establish that the funds were exempt.  Everything up to

20 that point I don't think there is any issue with.

21    The statute 5222-a puts on a tight time requirement

22 for the benefit of the judgment debtor or the law firm or

23 whoever is putting the restraint to look at whatever

24 information is provided them and make a determination in the

25 first instance as to whether or not they want to change the

1    claim of exemption.

2         THE COURT:  It's more specific than that, not just

3    whether or not they want to challenge it.

4         MR. NOVIKOFF:  If there is a reasonable basis.

5         THE COURT:  Right.  They have to make a determination

6    whether or not the evidence before them at that point in time

7    gives them a basis to continue to hold these funds.

8         MR. NOVIKOFF:  That's exactly right, your Honor.

9    There is no dispute on that.  In this instance, based upon the

10   allegations in the complaint as incorporated, because the

11   plaintiff has attached those bank records, Gutman Mintz made a

12   decision in this particular case that the bank records that

13   were provided by the plaintiff were incomplete and

14   insufficient.  Your Honor, as I noted in my reply memorandum,

15   can take a look at these bank records.

16        THE COURT:  Ultimately, on the day that he showed up

17   in court, out in the hallway they determined that it was

18   sufficient for them to lift the restraint.  You have to explain

19   to me how that is, if there was no different evidence presented

20   to them from when the plaintiff first provided the information,

21   and that was the same information that they looked at when they

22   were standing in the hallway in court.

23        One, if a determination was made that he was entitled

24   to those funds because they were Social Security funds, why was

25   that determination made when they are standing out in the hall,

1  when they drag him into court, as opposed to when they got the

2  information?  If they got no new information, what makes the

3  lightbulb go off in their head when they are standing in the

4  hallway?

5          Two, if they made a determination that they have

6  sufficient evidence to lift the restraint, what happened

7  between the time that they got the information and the time

8  they decided to agree?  And aren't the representations made

9  that they have the right to hold these funds after they get

10  this information false representations?

11          MR. NOVIKOFF:  No, your Honor.  I will address

12  specifically your Honor's question in about 30 seconds.

13          5222-a is specific.  It's a pleading requirement.

14  They need to have a factual basis for a reasonable belief and

15  plead that in the motion.  They did that.  Two bases, as set

16  forth in the complaint:  One, we told Bank of America and they

17  know that if they are all exempt funds, don't restrain any of

18  them, they pled that; two, they did make a representation that

19  the bank records that were produced were insufficient.

20          THE COURT:  That wasn't true.  The bank records were

21  sufficient because they ultimately, out in the hall on the day

22  they showed up to court, said okay, never mind.

23          MR. NOVIKOFF:  There can be countless reasons why that

24  takes place.

25          THE COURT:  I'm asking.  Is there any other reason?

1    There can't be any other reason that is different from why they

2    said no when they got the information and why they said yes

3    based on the same information months later.

4          MR. NOVIKOFF:  There could be many reasons.  I'll give

5    you some examples, your Honor.  But there was nothing false

6    about the pleading.

7          THE COURT:  Not false about the pleading.  The

8    allegation is, you say, very narrow.  They say there was

9    something false about the representation.  I don't know whether

10   there was something false about the representation.  But they

11   say the continued representation that they had the right to

12   restrain these funds was a false representation because they

13   had the information that the plaintiff claims put them on

14   notice that they didn't have such a right, the same information

15   that they acted upon when they lifted the restraint.

16         MR. NOVIKOFF:  Respectfully, your Honor, I disagree.

17   That doesn't even go to the bad faith aspect of it.  This is

18   just a pleading requirement.  Did they have a reasonable belief

19   to think that the records were insufficient and that the funds

20   that plaintiff was claiming are exempt are really nonexempt?

21   Look at the bank records.  They are asking this Court now to be

22   a state court judge and make a reasonability determination.

23         THE COURT:  You are asking me to resolve that issue up

24   front when that is a factual dispute.

25         MR. NOVIKOFF:  It really isn't.

1          THE COURT:  I have no idea why they decided that it

2     was sufficient the day they were in court out in the hallway as

3     opposed to when they first got the records.  As far as I know

4     from what they have alleged, they had absolutely no additional

5     information when they got to court to base a different

6     determination on than the determination they made to reject it

7     when they first got it, and to only accept it when, as they

8     would argue, you forced the plaintiff to have to show up at

9     court and you took your shot at trying to force him to give up

10     his Social Security funds or to pay the debt so he wouldn't

11     have to come to court.

12          But when that wasn't a successful motivation for him,

13     then you decided, okay, we always knew that we didn't have a

14     basis to restrain here, we might as well just tell him, fine,

15     since you're here, we are going to release the funds.  The

16     defendant never used the court process for that because there

17     was no hearing.  There was no determination by the court.

18     Everything that happened on the day of the court appearance

19     that was relevant to this case happened out in the hall, and it

20     was a decision made by the client.

21          MR. NOVIKOFF:  Perhaps that's a factual issue as to

22     what took place in court.  My only comment to your Honor, as I

23     think your Honor can appreciate, there are multiply times when

24     counsel will appear before your Honor with a legal strategy and

25     your Honor, or even a state court judge, given the imprimatur

G3nrarim

1    of authority that you have -- your words matter and your words

2    carry great influence -- you can say to an attorney, you can

3    make your motion and you can proceed this way, just throwing an

4    example out, I could get this down in five days, but I can tell

5    you I have a trial going on so you may be sitting there for

6    eight hours.  Then counsel says to them, well, I'm fighting

7    over -- I'm not suggesting that this took place here.  But that

8    may be a factual issue.

9         The key issue, which is not a factual issue, your

10   Honor, is what communication in the motion, because that's what

11   we are talking about, the motion that was made by some

12   associate at the time of Gutman Mintz, was a material

13   misrepresentation.

14        THE COURT:  You don't have to convince me on that.

15   I'm not worried about the motion.  I am worried about the

16   representations that were made to the plaintiff after the

17   plaintiff provided the evidence.

18        MR. NOVIKOFF:  That's the motion, your Honor.

19        THE COURT:  No, that wasn't just the motion.

20        MR. NOVIKOFF:  Yes, it was.  Plaintiff provided my

21   client, Gutman Mintz, with what he purported to be bank

22   records.

23        THE COURT:  Right.

24        MR. NOVIKOFF:  Gutman Mintz took them, looked at them,

25   made the motion attaching the bank records.  In their motion

1  they said, paragraph 14 and paragraph 16, well, this is my

2  reasonable basis: (1) Bank of America didn't restrain it and

3  (2) I have looked at the bank records and for this reason I

4  find them insufficient.

5       Really the only communications, respectfully, your

6  Honor, and I think it is important to fine-tune this, the only

7  representations or communications that plaintiff made that

8  plaintiff is alleging violate the FDCPA was in the motion.  He

9  may be using as evidence of intent, and I'll get to that in a

10  second, what may have taken place in the courtroom that day.

11       THE COURT:  I don't know what took place in the

12  courtroom.

13       MR. NOVIKOFF:  Plaintiff argues, and he is correct,

14  that this is a strict liability statute.  Intent is not

15  important except for certain aspects of damages.  The intent of

16  Gutman Mintz, whether they made a mistake or whether they were

17  willful, when it comes to liability, is meaningless and

18  irrelevant.

19       The question that the courts ask for FDCPA liability

20  only is:  Did you make a communication, a representation, or

21  undertake an action which is fraudulent or deceptive as to the

22  status and nature of the debt or otherwise impede the judgment

23  debtor's ability to challenge and defend himself in a

24  proceeding?

25       THE COURT:  They say the misrepresentation was that

1    the funds were not exempt under the exception that they were

2    Social Security funds.  They say that that was a false

3    representation.

4             MR. NOVIKOFF:  How is that material?

5             THE COURT:  It is clearly material.

6             MR. NOVIKOFF:  Respectfully, it is not because --

7             THE COURT:  Wait.  Slow down.

8             MR. NOVIKOFF:  I'm sorry.

9             THE COURT:  It is definitely material because that is

10   the only basis on which any court would determine whether or

11   not you had the right to seize the funds or didn't have the

12   right to seize the funds.  The only issue was whether or not

13   they were exempt because they were Social Security funds.

14   There was no other issue.

15            There wasn't an issue about whether you owed the debt.

16   There wasn't an issue about whether you had a valid judgment.

17   The only issue was whether or not you have a right to hold his

18   Social Security funds and what representations were made with

19   regard to that right.  That's the only issue.

20            MR. NOVIKOFF:  I agree with your Honor almost to the

21   end.  The representation was we have a reasonable belief that

22   the funds that you claim are exempt are not exempt.  Where I

23   disagree with your Honor strongly, but respectfully, is that

24   there is no dispute that the communication was we have a

25   reasonable belief that what you are saying to us about the

1   funds is not correct and that we are entitled as a matter of

2   law to keep the funds.  That's what they are required to do

3   under the statute.

4           One more thing.  It's just not the communication, it's

5   the effect of the communication.

6           THE COURT:  Right.  The effect of the communication

7   was that you didn't release the funds.

8           MR. NOVIKOFF:  No, the effect of the communication has

9   to be not the result of what the communication was, but what

10  impact that communication had on the plaintiff or on a least

11  sophisticated judgment debtor.

12          THE COURT:  It made the plaintiff's money be

13  restrained until they forced the plaintiff to show up to court

14  in a situation where he alleges that you knew you were going to

15  dismiss this case anyway.

16          MR. NOVIKOFF:  Respectfully, your Honor, the case law

17  does not provide that that is what is considered to be a

18  material misrepresentation.

19          THE COURT:  Slow down.  I want to make sure I under-

20  stand the extent of your argument.

21          MR. NOVIKOFF:  Okay.

22          THE COURT:  Your argument is that if the debt

23  collector told the debtor that we have a right to seize your

24  funds even though you claim that they are Social Security

25  funds, and they know that that is not true, you're saying that

1    that wouldn't be a material misrepresentation?  You have to

2    answer that question first.

3              MR. NOVIKOFF:  I'm going to answer that in this

4    context, your Honor.

5              THE COURT:  Answer it yes or no first.

6              MR. NOVIKOFF:  Yes, because the context is different.

7    In this context, under the fact pattern that is alleged by

8    plaintiff, because it comes under 5222 and it's an attorney, I

9    would answer respectfully that that is not a material

10   representation for the following reasons.

11             The plaintiff understood the amount of money that was

12   being restrained.  The plaintiff understood what his rights

13   were under the law.  The plaintiff followed what the statute

14   said.  The plaintiff was not misfiled to any degree in terms of

15   submitting his exempt forms or what he thought was documentary

16   proof.  Most importantly --

17             THE COURT:  Where does the statute say that those are

18   the relevant considerations.  The statute doesn't say that.

19   The statute simply says did you make a material mis-

20   representation.

21             MR. NOVIKOFF:  The case law defines materiality.  It

22   is cited in Lautman, it's cited by the Second Circuit.  In the

23   case law, Second Circuit case law, I believe it is clear that

24   materiality is defined two ways.  (1) Did you misrepresent the

25   nature of the debt that is owed?  They didn't.  Plaintiff knew

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  exactly what the debt was that was at issue.  (2) Did any of

2  your communications impede the ability of the judgment debtor

3  to challenge the actions of the counsel for the judgment

4  creditor?

5          THE COURT:  That limited interpretation of the statute

6  I'm not sure I can agree with.  There are a lot of things that

7  you can misrepresent to the debtor, an unsophisticated debtor,

8  that may affect whether or not they are going to be prejudiced

9  by that representation.  It is not limited to whether or not

10  they can go to court and file a lawsuit.

11          MR. NOVIKOFF:  No, go to court and defend.

12          THE COURT:  It is not limited to whether they can just

13  go to court and defend.  If you say to him, you owe a debt, and

14  he says, that's not my debt, that's somebody else's debt, I'm

15  not the person on the lease, the roommate is the person on the

16  lease, and you say to him, you know what, it doesn't matter

17  because you have to pay it anyway --

18          MR. NOVIKOFF:  I agree with your Honor.

19          THE COURT:  -- and the guy ends up giving you his

20  money, you can't say that is not a material misrepresentation.

21          MR. NOVIKOFF:  That was the example I was going to

22  give but not with the landlord-tenant situation.  Your Honor is

23  a hundred percent right.  But the allegations here aren't that.

24  The allegations aren't that Gutman Mintz in any communication

25  either on the telephone or in the papers said -- again, we have

1    an issue with papers, as to whether that is a communication,

2    but for purposes of this motion I will accept that.

3          Gutman Mintz never said you have no defenses.  Gutman

4    Mintz never said don't bother showing up in court because

5    you're going to lose.  Gutman Mintz didn't say it doesn't

6    matter that you claim the funds are exempt, we are going to get

7    the money because, exempt or not exempt, we get it.

8          THE COURT:  You said was the funds aren't exempt, but

9    they say that you knew that they were.  That's the crux.

10          MR. NOVIKOFF:  In your Honor's scenario, which I think

11    was an excellent scenario, the judgment creditor's attorney

12    made an affirmative statement that impeded in some degree the

13    least sophisticated judgment debtor from thinking, okay, if an

14    attorney tells me it doesn't matter that my name is not on the

15    lease, I'm going to lose, I might as well pay.  In this case

16    Gutman Mintz never said that.

17          THE COURT:  You have to convince me that what is

18    determinative is the plaintiff's response rather than the

19    collector's intent.  The statute does not only cover whether or

20    not it prejudiced the plaintiff.  It prohibits certain

21    practices.

22          MR. NOVIKOFF:  You're right.

23          THE COURT:  The question is not whether or not those

24    practices were successful or unsuccessful in collecting the

25    debt.  The statute is set up in such a way that it says we are

1  going to prohibit these practices and provide for statutory

2  damages even when it doesn't prejudice the plaintiff, and we

3  are going to make injunctive relief appropriate to prevent debt

4  collectors from doing this even in instances where it doesn't

5  impede the plaintiff's ability to go to court.

6        That's what the statute is dealing with.  If you had

7  done this a hundred times, just because the plaintiff who sued

8  you is not one of the ones who gave over their money, it

9  doesn't mean they don't have standing to sue you for that

10 practice.

11        MR. NOVIKOFF:  Let me convince your Honor in the

12 limited time that your Honor is going to give me back.  Yes,

13 the Fair Debt Collection Practices Act, and specifically

14 1692(e), does provide specific instances of conduct that would

15 be in violation.  I can't go down the list, but your Honor has

16 seen it.

17        1692(f) is almost like a catch-all, saying if you

18 don't fall under 1692(e), maybe 1692(f) will cover it.

19 1692(e), the provisions they are going under, is a very

20 generalized statement of did you make a miscommunication,

21 deceptive fraud.  Respectfully, your Honor, the statute doesn't

22 define materiality because the Second Circuit has acknowledged

23 that there is no materiality provision.  But the Second Circuit

24 and other circuits have defined what materiality is.

25        So, respectfully I would disagree with your Honor.

1    When you are looking at materiality, it doesn't look at the

2    intent of the judgment creditor or the judgment creditor's

3    attorney.  It looks only, on materiality, as to what the impact

4    was on the judgment creditor or would have been on the least

5    sophisticated.

6         THE COURT:  Right, would have been on the least

7    sophisticated.  That is broader than what you just said.

8         MR. NOVIKOFF:  Right.

9         THE COURT:  It is not the actual impact on this, but

10   what would be the impact on the least sophisticated creditor.

11   Their argument would be the impact on the least sophisticated

12   debtor would be, you know what, they tell me I got to go to

13   court, they tell me I'm going to lose, they tell me that I have

14   to pay this money anyway, so I might as well borrow from my

15   mother and give them their money.  That would be the impact an

16   the least sophisticated debtor.

17        MR. NOVIKOFF:  It goes back to this motion, and that

18   is why this is so important.  This isn't a communication that

19   took place outside the context of 5222-a.

20        THE COURT:  Why is that apparent?

21        MR. NOVIKOFF:  You have to put the least sophisticated

22   consumer in the context of what's going on here.

23        THE COURT:  Right.

24        MR. NOVIKOFF:  The least sophisticated consumer would

25   have gotten a notice from the bank saying these funds have not

1  been restrained but we think there may be funds that aren't

2  exempt so we are going to restrain them.

3          THE COURT:  What the bank thinks is irrelevant.

4          MR. NOVIKOFF:  Exactly.  But it goes to the least

5  sophisticated consumer.  Here are the bank forms, which the

6  bank is required to give.  The exempt forms give what the

7  instructions are.  The least sophisticated consumer isn't a

8  dope or an idiot, but they are not a brain surgeon either.

9  They get the exempt form.  The least sophisticated consumer

10 would cross off exempt and provide whatever documentation he or

11 she may think.

12         THE COURT:  Rightly.

13         MR. NOVIKOFF:  That is the context.  Now we have a

14 least sophisticated consumer saying all these funds are exempt

15 because of Social Security, here's my form and here's my bank

16 document.  Gutman Mintz, as it is required to do under the

17 statute, says no, we believe --

18         THE COURT:  They are not required to do that under the

19 statute.

20         MR. NOVIKOFF:  They are required to challenge it.

21         THE COURT:  What they are required to do is to make a

22 realistic assessment and in good faith take a position in

23 response to that.

24         MR. NOVIKOFF:  Your Honor said good faith, and that is

25 the key, too.

1          THE COURT:  I can't determine good faith on this

2   motion.

3          MR. NOVIKOFF:  To some degree you can because the case

4   law, I'm going to cite to your Honor -- I failed to put this in

5   my papers because I didn't think it was going to come up, but

6   it has now -- Aish HaTorah v. Fetman, 15 N.Y.S.3d 710 Supreme

7   Court Kings County.  I'm citing these supreme court cases

8   because, as your Honor can appreciate, very few cases have

9   really interpreted the statute.

10          It says that the statutory prerequisite for the

11  recovery of damages and the penalty of bad faith in failing to

12  instruct the bank to release funds that are demonstrated to be

13  exempt requires the plaintiff in the first instance to submit

14  two months of complete bank records.

15          THE COURT:  That's what they did.

16          MR. NOVIKOFF:  No, your Honor, and that's the problem

17  here, they did not.

18          THE COURT:  I thought the representation was and the

19  allegation was that they did submit it.  If you dispute that,

20  that's a different question.  I thought I read in their papers

21  or in their complaint that said they submitted exactly what the

22  statute said they had to.

23          MR. NOVIKOFF:  Here is the important thing, your

24  Honor.  Yes, if they submitted what I always understood to be

25  bank statements -- perhaps your Honor can take judicial notice

1   because I think you can do that on things that are common and

2   ordinary -- a bank statement that I understand has deposit

3   information on it, it has withdrawal information on it, so that

4   you know the bank activity.  It's not just deposits.  It's

5   withdrawals.

6       They have attached the bank documents to their

7   complaint, so they have incorporated them into the complaint

8   and your Honor can look at them.  The bank records, as I

9   identify in the reply memorandum, have nothing other than what

10  they claim to be deposits.  It appears to be a cut-and-paste.

11  Gutman gets that.  They see two documents that have no

12  withdrawals on it, they have what appears to be on its face a

13  question.  For example, all he has is $785 a month, that's all

14  he's getting.  The last month statement there is a line that

15  says withdrawals of $1100, but there is no reflection of what

16  the withdrawals are.

17      THE COURT:  What difference does it make?  It makes

18  absolutely no difference as to the source of the funds, what he

19  did with the funds after he got them.

20      MR. NOVIKOFF:  Yes, it does.

21      THE COURT:  If they were Social Security funds, he

22  could have spent them on going to the movies if he wanted to.

23  That doesn't change the issue.

24      MR. NOVIKOFF:  Yes, it does, your Honor.

25      THE COURT:  Does not.  It would still be exempt funds.

1          MR. NOVIKOFF:  The document itself doesn't reflect a

2     bank record.

3          THE COURT:  You would agree that the determination of

4     whether it is exempt funds is where it came from, not where it

5     went.

6          MR. NOVIKOFF:  Your Honor is a hundred percent right.

7     If they received a bank record of 2 months or even 11 months,

8     but 2 months that had deposits and had withdrawals on it, then

9     clearly that would be sufficient.  But in this case the

10    document only had deposits.

11         THE COURT:  So?

12         MR. NOVIKOFF:  How could a reasonable attorney or

13    judgment creditor take a hearsay document that is uncertified

14    by a bank and say I'm not going to challenge it?

15         THE COURT:  The awkwardness of your argument is the

16    fact that that's exactly what they did.  That's exactly what

17    they did.  When they got to court, in the hall, they didn't get

18    any other documents.  They simply said okay, fine, take care,

19    go home, and they walked into the court and said we are not

20    pursuing this, we are satisfied.

21         You're right, if the facts had been different and they

22    had taken that position all the way through, no one could argue

23    that was a reasonable basis for them to make that conclusion.

24    But the fact is they did make that conclusion based on that.

25         MR. NOVIKOFF:  I appreciate what your Honor is

1   saying --

2       THE COURT:  Your case would be easier to argue.

3       MR. NOVIKOFF:  It would be much easier if they went

4   through the process, lost all along, and that would be it.  But

5   materiality is not judged by what took place in court.

6       THE COURT:  No, but good faith is.

7       MR. NOVIKOFF:  Right.

8       THE COURT:  Good faith is.  If they had the

9   information a month before it was given to them, given to them

10  I don't know how much earlier --

11      MR. NOVIKOFF:  Three weeks or five weeks, whatever.

12      THE COURT:  Say they were given the information a

13  month before.  The question is when they got into the hallway

14  of the court it was good enough to satisfy them, how could they

15  abandon this case just based on these records?  I don't know

16  how they could, I just know that they did.

17      MR. NOVIKOFF:  My last point is because bad faith is a

18  context of the 5222-a statutory scheme.  I'm not suggesting by

19  what I'm about to say that my client acted in bad faith; it

20  didn't.

21      THE COURT:  No.

22      MR. NOVIKOFF:  But it is not an element of materiality

23  because it is a strict liability statute for purposes of

24  liability.  It doesn't matter, quite frankly, if Gutman Mintz

25  said, you know what, yeah, I've seen this before, if they don't

G3nrarim

1    show up, we win; if they show up, maybe we can settle

2    something, maybe we can do something.  I'm not suggesting that

3    they did that.

4         The materiality of it for violation of 1692(a) is what

5    communication did you do to impede.  It doesn't matter what my

6    intent was.  It's strictly --

7         THE COURT:  You keep saying impede.  It's not that

8    limited.  It's what action you took in order to obtain the

9    money from the plaintiff in a way that was inappropriate and

10   prohibited by the statute, that was unfair, that put undue and

11   inappropriate pressure on the person to settle.

12        The reality is, by your analysis, picking up the phone

13   and calling him ten times a day and saying we want the money

14   because it's not exempt wouldn't violate the statute.

15        MR. NOVIKOFF:  No, that would be harassing.

16        THE COURT:  Well, okay.  But you're saying it wouldn't

17   violate this portion of the statute.

18        MR. NOVIKOFF:  It would not violate a fraudulent or

19   deceitful or misrepresentative communication.  It would violate

20   under your Honor's scenario probably five other provisions.

21   That's my point.

22        THE COURT:  You would agree, and maybe you won't, that

23   if you know that the funds are exempt and you represent to the

24   debtor --

25        MR. NOVIKOFF:  And the court.

1      THE COURT:  The debtor.  I don't care who else you

2  represent it to.  You can represent it to whoever you want to

3  represent it to, but the statute says you can't represent to

4  the debtor.  If you represent to the debtor that they have the

5  obligation to pay this, even though they claim it's exempt,

6  because you say it's not exempt and you know that that is not

7  true, wouldn't that be a false representation?

8      MR. NOVIKOFF:  I would say outside the context of

9  5222-a, if Gutman Mintz, without any type of restraint or

10  anything else, called the judgment creditor up and said your

11  funds are nonexempt and you owe me the money and you better pay

12  me the money because if you don't pay me the money I'm going to

13  sue you, yes, that's in violation.

14      THE COURT:  Suppose they say I've already sued you, if

15  you don't pay me the money, I'm going to collect it in court,

16  if you never intended to do that.

17      MR. NOVIKOFF:  That would be outside the 5222-a

18  context.

19      THE COURT:  Why is that outside?

20      MR. NOVIKOFF:  5222-a is specific.  It says you have

21  seven or eight days to find a factual basis or reasonable

22  belief, plead that, articulate that to the court in a motion,

23  and then it is up to the court to determine whether or not

24  you're right or wrong.  The court can look at the papers or --

25      THE COURT:  That doesn't excuse false representation.

1  It doesn't excuse material false representation.

2       MR. NOVIKOFF:  It does because --

3       THE COURT:  You made an argument that somehow because

4  you are in court, the statute doesn't apply.  The cases don't

5  say that.

6       MR. NOVIKOFF:  There is no absolute immunity.  But in

7  this case all Gutman Mintz was required to do --

8       THE COURT:  Was to make a true representation to the

9  client.

10      MR. NOVIKOFF:  To the court and obviously --

11      THE COURT:  The court is irrelevant.

12      MR. NOVIKOFF:  It's a motion.  It's going to the

13 court.

14      THE COURT:  It doesn't matter.  You served that

15 representation on the other side.  You made that representation

16 to the plaintiff.

17      MR. NOVIKOFF:  Yes, and the representation to the

18 judgment debtor through that motion was we have a reasonable

19 belief.

20      THE COURT:  Right.  That's the dispute, whether you

21 had a reasonable belief.  You say that you had a reasonable

22 belief three weeks before you got to court, but you abandoned

23 somehow that reasonable belief in the hallway when you got to

24 court.  Isn't it kind of curious that you are saying you have a

25 reasonable belief when you get the documents but you show up to

1   court hoping the guy doesn't show up, but he does show up, and

2   then you say, okay, we were convinced all along, so now that

3   you have shown up, when we said that we had a reasonable belief

4   that it was exempt, only joking, we just wanted to see if you

5   were going to show up to court; since you showed up to court,

6   the reality is this is good enough, we are convinced, bye, go

7   back home?  Isn't that the dispute here?

8           MR. NOVIKOFF:  Respectfully, no.  The dispute is what

9   the bank documents show to Gutman Mintz.

10          THE COURT:  No.  The dispute is whether or not the

11  bank documents that you had gave you a basis to believe the

12  funds were exempt or the funds weren't exempt.  The only

13  evidence that I have is that those bank documents gave you a

14  basis to believe that it was exempt because when you got to

15  court you said we're not pursuing this.  Right?

16          You've got to acknowledge, if you are going to be

17  reasonable, that it is not on your side of the ledger that in

18  the hallway with the same documents you got three weeks ago you

19  abandoned that position.  If you were standing in the hallway

20  and you said, we're convinced and we're going to go tell this

21  judge and we're going to prove this and you went in there and

22  proved it, that would be on your side of the ledger.

23          MR. NOVIKOFF:  If they had continued down that road.

24          THE COURT:  Right.

25          MR. NOVIKOFF:  Respectfully, your Honor, you're now

G3nrarim

1    putting counsel in the position of I reviewed documents, in

2    this case the documents are part of the complaint and your

3    Honor can take a look at them, and they are not complete, I

4    think they are not complete, I'm going to exercise in my seven

5    or eight days I have to make a decision my statutory right on

6    behalf of my client to object, to file a motion, and within

7    that motion satisfy my statutory obligation to state a factual

8    basis or a reasonable belief.  They did that.

9           THE COURT:  What changed when you got into court?

10          MR. NOVIKOFF:  Multiple things could change.

11          THE COURT:  I don't know.  That is the point.

12   Multiple things could change.  But those are factual issues.

13   You would agree that if you got the documents and there's a

14   memo in your client's file on the day that the documents are

15   obtained and it says, you know what, they are giving us these

16   bank records, even though they are not complete, this is exempt

17   funds, these are Social Security funds, and we should not

18   pursue this any further, if you have such a memo in the file,

19   you would agree that that would be inconsistent with and may be

20   a violation of the statute if, despite that conclusion being

21   made when you got the documents, you forced him to come to

22   court anyway waiting to see if he was going to show up to court

23   before you decided not to pursue it.  I was just going to see

24   how far you are pushing this argument.

25          MR. NOVIKOFF:  I'm going to push it to this point.

1   I'm saying your Honor poses a difficult question and it is not

2   consistent.  If the documents were insufficient under the

3   statute, I don't believe that there would be a lack of a

4   factual basis or a reasonable opinion as to the issues under

5   5222.

6           THE COURT:  You say that, but that is the opinion that

7   was reached when you got to court.  Those documents weren't a

8   basis for you to enforce your rights to collect this money.

9           MR. NOVIKOFF:  No.  What happened in court was Gutman

10  Mintz's attorney, whoever it was at the time, made a decision

11  after conferencing with the presiding judge, as alleged, that

12  we are not going to pursue this.

13          THE COURT:  Why?  That's the question.

14          MR. NOVIKOFF:  There could be multiple reasons why.

15          THE COURT:  One of them could be because we knew all

16  along that this money was exempt and we don't have a legal

17  basis to prevail in court.

18          MR. NOVIKOFF:  The other would be that on the face of

19  the documents in our motion, we satisfied the pleading

20  requirement that the statute requires but know we have decided

21  not to pursue it for cost factors.

22          THE COURT:  That's true.  But those are factual

23  issues.  I don't know what they were thinking.

24          MR. NOVIKOFF:  Our point, and I'll end it here unless

25  your Honor wants to continue --

1          THE COURT:  I don't know what they were thinking.  I

2     don't know if they knew right away when they got these

3     documents that there was no basis for them to further restrain

4     this and there was no good faith basis for them to go into

5     court, tell the judge or tell the plaintiff that they were

6     going to pursue this and they were going to prove this and they

7     really had a good-faith belief that they could prove this even

8     though it was clear that it was Social Security funds.  I don't

9     know that.  You may prevail there.

10         MR. NOVIKOFF:  My final argument, your Honor, is that

11    I don't believe that either post-communication evidence or,

12    more importantly, the quote-unquote intent of the lawyer for

13    the judgment debtor is relevant to the court's consideration on

14    a motion like this as to whether the communications that were

15    set forth in the motion or in any other context were deceptive

16    on their face, fraudulent on their face, misrepresentative on

17    their face as to the scope of the debt or in some manner

18    impeded or caused the judgment debtor not to exercise his or

19    her ability to challenge the debt.  Intent, to my

20    understanding, is irrelevant.

21         THE COURT:  What case are you relying on that says it

22    has to impede their ability to challenge it in court?

23         MR. NOVIKOFF:  I will tell you in one second, your

24    Honor.

25         THE COURT:  I don't think it is limited to that.  If

1    you can convince me that that is the only circumstance where it

2    can be a material misrepresentation because the only thing

3    that --

4            MR. NOVIKOFF:  This is on page 12 of my reply

5    memorandum of law.  I'll read if you want to indulge me so I

6    have the complete context.  "FDCPA section 1692(e) generally

7    prohibits 'all deceptive or misleading representations or

8    meanings in connection with the collection of any debt.'

9    Although not provided in the text of the statute, several

10   circuits have also read a materiality requirement under 1692(e)

11   citing Delmoral," which is an Eastern District case in 2015.

12   "The Second Circuit has not expressly adopted this requirement

13   but they have cited several such cases with approval."

14   Delmoral citing the Gabriele case that plaintiff cited in his

15   papers, Second Circuit 2012.  I won't read the parenthetical.

16           This is where I write, critically, "Case law

17   demonstrates that communications and practices that could

18   mislead a putative debtor as to the nature and legal status of

19   the underlying debt or that could impede a consumer's ability

20   to respond to or dispute collection violates the FDCPA."

21   Abramov, 54 F.Supp. --

22           THE COURT:  That language is "or."  That's alternative

23   language.

24           MR. NOVIKOFF:  I'm saying neither one is satisfied.

25           THE COURT:  We are dealing with the first one.  Read

1    to me the language before the "or."

2          MR. NOVIKOFF:  "Could mislead a putative debtor as to

3    the nature and legal status of the underlying debt."  How can

4    this have misled the plaintiff or a least sophisticated debtor?

5          THE COURT:  The legal status of the underlying debt?

6          MR. NOVIKOFF:  Yes.

7          THE COURT:  The legal status of the underlying debt is

8    either it is collectable or it is not collectable from the

9    funds that you seized.  That's one interpretation.

10          MR. NOVIKOFF:  That would have presupposed that

11    nothing that transpired -- meaning the plaintiff and the least

12    sophisticated.  It is required by statute.  So we have to put

13    the least sophisticated debtor in this context.

14          THE COURT:  Correct.

15          MR. NOVIKOFF:  By statute, Gutman and the bank were

16    required to provide them, the putative debtor, with the exempt

17    form.  The exempt form has all of the instructions listed as to

18    what you do.

19          THE COURT:  That is not at issue.

20          MR. NOVIKOFF:  Right.  It is only because then the

21    least sophisticated putative debtor looks at it and says, bank,

22    you're wrong, I'm checking off that all my funds are exempt and

23    here is my documentation.  All Gutman did, putting aside what

24    their intent may or may not have been, because I think you

25    should apply the liability statute, they just said to the

1    putative debtor, in this case the plaintiff, we challenge your

2    claim and the reasonable basis that we challenge the claim on,

3    as we are required to assert in these papers, is the following:

4    (1) The bank itself couldn't determine whether your funds were

5    exempt and they look at your bank account, and (2) the

6    documents that you gave us in our opinion were insufficient.

7        THE COURT:  I would have to look at the underlying

8    correspondence in the filing.  I'm not sure that the only

9    statement that was made was that we challenge the claim.  The

10   statement that was made is that the funds are not exempt.

11       MR. NOVIKOFF:  That's the nature of the motion.

12       THE COURT:  Wait a minute.  That's a different

13   representation.  The representation that we are going to

14   challenge the claim is one thing.  Let's not talk about intent.

15   Let's talk about knowledge.  If you know that the funds are

16   exempt, then that's a false material representation, isn't it?

17   I'm willing to be convinced, but you have to give me a

18   reasonable response to that question.

19       MR. NOVIKOFF:  The problem I have with the question is

20   because we have the bank statements.  I would agree with your

21   Honor that on a pleading motion such as this, if plaintiff's

22   counsel did not attach the bank statements and they said we

23   submitted bank statements that clearly showed that the funds

24   were exempt, I would be hard-pressed to argue that that

25   allegation alone wouldn't be sufficient.

1          THE COURT:  That's what they say happened when you got

2     to court.

3          MR. NOVIKOFF:  Then you have to look at the bank

4     records that they have attached and the motion that they have

5     attached.

6          THE COURT:  Right.

7          MR. NOVIKOFF:  My client's motion where my client says

8     the bank records are insufficient.

9          THE COURT:  They don't know.  They didn't say the bank

10    records are insufficient.  The bank records were clearly

11    sufficient for them to abandon their claim that they were

12    entitled to take these funds from that bank account.  They were

13    clearly sufficient because that is what they decided.  Your

14    argument would be much stronger if they went to a hearing or

15    when they got to court they never changed their position with

16    regard to the funds.

17         But they got to court, and as soon as they got to

18    court, they said, never mind.  That's a little awkward for your

19    position.  You were absolutely right that if they wanted to

20    challenge this and they took a genuine position that there was

21    a reasonable basis to believe that these were exempt funds,

22    they had every right to say that, to say that to the court, to

23    articulate that to the plaintiff, and to go to court and to

24    demonstrate that in the court.  But that's not what happened.

25         MR. NOVIKOFF:  I think your Honor, respectfully, is

1  putting counsel in difficult positions where they follow the

2  statute.  I don't ask judges questions, but --

3        THE COURT:  I'll give you an answer.

4        MR. NOVIKOFF:  Fair enough.  If your Honor looked at

5  these bank records and said -- I'll just pick a bank.  Your

6  Honor's bank is Chase if you're like me, you go online every

7  day and see your bank statements to make sure no one is

8  committing fraud.  You see a bank statement.  My bank statement

9  says, as I think most people's do, this is what you deposited,

10  this is what you withdrew.

11       You look at those statements and say, I only see

12  partial bank records, it doesn't give me the complete activity,

13  there seems to be some inconsistency with what the balance is

14  versus this.  As a law firm, now you say I have seven, eight

15  days to consider this, I'm going to do what I'm required to do

16  under the statute, I'm going to put my motion in, I'm going to

17  put a reasonable basis for it in.

18       Then you show up to court.  For whatever reason -- it

19  could be that the client no longer likes you; it could be that

20  the judge looked at you and said, Mr. Novikoff, you can do

21  whatever you want, but I really think that you want to

22  reconsider your position, or Mr. Novikoff, you're going to be

23  here eight hours and you're going to be last on line but you're

24  more than welcome to have a hearing; then counsel says, as we

25  all do, that's great, I'm going to be billing my guy $300 an

1  hour for a $1500 claim, plaintiff is not settling, so what's

2  the point, we lose even if we win.  Correct?

3       THE COURT:  I assume you could have made that

4  assessment before you showed up.

5       MR. NOVIKOFF:  My point is that if your Honor looks at

6  the bank records and says they are not complete, how could this

7  court challenge, respectfully, the reasonability on a pleading

8  motion of what Gutman Mintz did?

9       This is what the plaintiff is asking the Court to do,

10  is basically be a 5222-a judge.  If the court looks at these

11  bank records and says, you know what, Gutman had a reasonable

12  basis to say these bank records were insufficient, they

13  therefore had the ability and the right under the statute to

14  challenge it and, if they could, cross-examine, then what

15  transpired in court that day is, respectfully, meaningless.

16       If the bank records themselves are insufficient on

17  their face, ipso facto, and I haven't used that word I think

18  since first year law school, ipso facto it's reasonable, ipso

19  facto it can't be bad faith, and only if there's bad faith

20  would you find liability under 5222-a.  If Gutman satisfies the

21  reasonability issue with regard to the motion, they can't be

22  found liable, respectfully, under the Fair Debt Collection

23  Practices Act.

24       THE COURT:  If that is your question, the answer to

25  your question is, first of all, it significantly depends on the

1   "if" that you keep giving me.  "If" means that I have to

2   determine whether those facts truly exist or a different set of

3   facts truly exists.

4          Two, there is nothing about these bank records that

5   would make me come to the conclusion one way or the other

6   whether this is sufficient to convince a reasonable attorney

7   that these funds should not be seized.  I can't look at that

8   and just say oh, because a page is missing, that means that

9   these records are totally unreliable and this doesn't convince

10  me, particularly since there is a possibility, given the facts

11  that are alleged, that they were convinced because they decided

12  to abandon that position.

13         I can't say whether or not, as you say, what goes

14  through the lawyer's mind is what you want to argue as opposed

15  to what is going through the lawyer's mind is what they want to

16  argue.  I don't know why the lawyer did this.  I don't know if

17  the lawyer did this to just squeeze cash out of the client or

18  whether the lawyer did this because they genuinely had a good

19  faith basis to believe, as you say, that this does not prove

20  that they are not exempt funds, we think we have the right to

21  pursue this, we only have a few days, we are going to stand on

22  that right, we are going to consider it further, we are going

23  to look at it further, we will go to court, and then we will

24  make a decision.  That could have been what happened.  I don't

25  know.  As I say, I don't know what happened.

1    Or what could have happened is they got the records

2    and they said, yeah, we really shouldn't be seizing these

3    funds, but you know what, let's tell them it's ours anyway and

4    see if they will just give us the money because he doesn't want

5    to be dragged into court, and we think that that's a decent

6    practice for us to engage in.  The argument would be that's not

7    a decent practice for you to engage in, you shouldn't try to

8    force people to give you money that you are not otherwise

9    entitled to by asserting to them that they don't have a legal

10   position when you know that they do have a valid legal

11   position.

12       MR. NOVIKOFF:  Which was stated.  This is also not a

13   circumstance where plaintiff has the burden -- plaintiff here,

14   defendant there -- would have the burden of proof.  It is my

15   client's burden of proof.

16       THE COURT:  Because that's your defense.  The only

17   reason you have the burden of proof is because that is your

18   defense.  That's not their claim.  Their claim is that you got

19   the records, you knew that these records were sufficient.

20   Circumstantial evidence that you knew these records were

21   sufficient is that you didn't demand anything more, you didn't

22   get anything else to convince you, you ultimately abandoned

23   this case based on the records that you had.

24       If you thought you had a valid claim, it would make

25   more sense for you to pursue that claim.  If you didn't think

1  you had a valid claim, it would make more sense for you not to
2  even bother to go to court.  But something else has happened if
3  you're going to go to court and then when you get to court
4  you're going to abandon the claim.
5       MR. NOVIKOFF:  The burden of proof, your Honor, that I
6  was talking about was in the state court.  It was Gutman's
7  client, 1700.  Plaintiff, defendant in that case, has already
8  put in its position as to whether it is exempt or not.  As far
9  as getting other documents, and I profess I'm not an expert on
10  5222-a, although in fact I have become very knowledgeable in
11  the two weeks, I don't believe we would be entitled to
12  additional documentation because it is such an expedited
13  proceeding.
14       THE COURT:  You think the only conclusion that can be
15  drawn is that based on these records, a lawyer could not
16  reasonably conclude that this was exempt funds?
17       MR. NOVIKOFF:  Yes.
18       THE COURT:  When the only deposits coming into the
19  account are direct deposits from the Social Security
20  Administration?
21       MR. NOVIKOFF:  Hold on now, respectfully.
22       THE COURT:  That's what they allege.
23       MR. NOVIKOFF:  No, no.  They allege that they have
24  attached the documents which show something completely
25  different.

1          THE COURT:  Show deposits into that account other than

2     Social Security deposits?

3          MR. NOVIKOFF:  They don't show anything other than

4     what they claimed, plaintiff claimed, to be deposits.

5          THE COURT:  Right.

6          MR. NOVIKOFF:  What you are asking now --

7          THE COURT:  An attorney's review of those documents

8     somehow doesn't convince the attorney that those are Social

9     Security deposits?

10         MR. NOVIKOFF:  No, no, no, your Honor.  It goes back

11    to they were incomplete only because they don't have the full

12    banking activity on them.

13         THE COURT:  You think there is a genuine dispute as to

14    whether or not those bank deposits were from the Social

15    Security Administration?

16         MR. NOVIKOFF:  No, we don't have a dispute.  We don't

17    believe we have a dispute that Mr. Arias received monthly

18    Social Security income which would have been exempt.

19         THE COURT:  Into this account?

20         MR. NOVIKOFF:  Into this account.

21         THE COURT:  And the only deposits into this account?

22         MR. NOVIKOFF:  That's what the issue is.

23         THE COURT:  Okay.

24         MR. NOVIKOFF:  It goes back to the reasonability

25    issue, which I think your Honor can look at on a 12(c) motion.

1  The documents, let's look at them, were not certified by a

2  bank.  They are missing information.

3      THE COURT:  You never said give us additional

4  information because we can't determine this.  You never said,

5  what you say is true looks like it is true, but we can't

6  determine this unless we see the full records, so why don't you

7  give us the full record.

8      MR. NOVIKOFF:  I'm sorry.  What was that, your Honor?

9      THE COURT:  The law firm never said that to the

10  plaintiff.

11      MR. NOVIKOFF:  It's not required.

12      THE COURT:  No, it is not required.

13      MR. NOVIKOFF:  I don't mean that as a defensive

14  position.  The statute, to protect the judgment debtor,

15  provides for a very expedited process.

16      THE COURT:  Right.

17      MR. NOVIKOFF:  You get it, the lawyer gets it, he or

18  she has eight days to file a motion.  I think the Court has to

19  hear in it two weeks, and then the court has to make a decision

20  in five days.  The statute I think explicitly doesn't allow for

21  subpoenas or for any additional information.

22      THE COURT:  The law firm never expressed that these

23  documents were inadequate proof.

24      MR. NOVIKOFF:  It did in the motion.

25      THE COURT:  What did it say that they wanted instead?

1          MR. NOVIKOFF:  It didn't say anything that they wanted

2     instead.

3          THE COURT:  Right.  It would be unreasonable to simply

4     say we need to see the withdrawals, because that would be

5     totally irrelevant as to whether or not the deposits were from

6     Social Security.

7          MR. NOVIKOFF:  This is the problem that I highlighted

8     in the reply memorandum.  Let's take this scenario.  I went to

9     law school because I don't like math.

10          THE COURT:  Me too.

11          MR. NOVIKOFF:  Let's make it $500 a month.  Let's say

12    he provides 11 months, like he did, of documents that show each

13    month he got $500.

14          THE COURT:  From Social Security?

15          MR. NOVIKOFF:  From Social Security.  But nothing

16    else.  No withdrawals, no other activity, no ATM, whatever it

17    may be, just that.  But the balance can is $10,000 on the

18    account.  In this case the balance was $4,000.  Also keep in

19    mind the withdrawal number on the bank account or the documents

20    that were provided was about $1100.  For the month activity

21    that was reflected in the document, there was a deposit of 750,

22    withdrawals of $1100, and balance of 4,000.  My scenario: 500

23    dollars a month but there is a balance in the account of

24    $10,000, and I have no idea what you spent money on.

25          THE COURT:  What difference does it make?

1    MR. NOVIKOFF:  If you have to pay rent or you have to

2  buy food or you withdraw $400 a month from the ATM, how is it

3  explained?  And you have been doing that consistently.  Let's

4  be honest here.  Unless Mr. Arias is living with someone he is

5  not paying rent to, $750 doesn't go anywhere.  If he has to buy

6  food, $750 a month isn't going that far.

7    So, knowing that that balance exists, seeing that you

8  are only getting $500 a month in Social Security, and not

9  knowing what withdrawals you took, why would it be unreasonable

10  for an attorney to say, you know what, this doesn't convince me

11  that you may not be getting funds from another source?

12    THE COURT:  He's represented that the only funds in

13  this account are the direct deposits.  He gives you 11 months

14  of deposits.  All of them are Social Security deposits.  On

15  what reasonable basis can you say we think you put some other

16  money in this account?

17    MR. NOVIKOFF:  Because it is not a complete bank

18  record.  It is a document that he provided to Gutman.

19    THE COURT:  Other than pure speculation, what possible

20  reasonable conclusion could one reach that somehow the funds in

21  that account are not exempt?

22    MR. NOVIKOFF:  You cut-and-pasted this document.  You

23  did something to this document when you provided it to us, it

24  wasn't what was required.

25    THE COURT:  I don't know if that's your defense.  You

1  think the client is going to say that they thought this

2  document was cut-and-pasted?

3        MR. NOVIKOFF:  They are going to say that the document

4  on its face was insufficient.

5        THE COURT:  That's a different question.  You just

6  said it could have been cut-and-pasted.  If there is some

7  evidence that it could have been cut-and-pasted --

8        MR. NOVIKOFF:  Respectfully, your Honor is imposing a

9  requirement under the statute that --

10       THE COURT:  No.  I'm just trying to figure out what is

11  reasonable.  You are giving me this as your defense.  I'm not

12  making this up.  I'm not throwing this on you.  You're throwing

13  this on me.  You're saying they could have thought this and

14  they could have thought that.  I don't know what they were

15  thinking.  I just know that's not what they thought when they

16  left court.

17       They didn't say we have a case here and before we make

18  the decision, before we make a reasonable decision about this,

19  we better get the complete bank records.  That's not the

20  decision they made when they got to court.  That was never the

21  decision they made.  When they got to court, the decision they

22  made was, ah, not worth our while.  That's what you claim,

23  right?

24       MR. NOVIKOFF:  That could be a reason, that they

25  decided it's not worth my while.  The reason could be we got

1  this judge and we know what this judge is like.

2        THE COURT:  Or the reason could be we were trying to

3  squeeze money out of the plaintiff to make him pay stuff that

4  we didn't have any right to take and we're just going to see

5  whether he is going to give us the money or if he shows up to

6  court and defends, then we know we are going to lose, so we

7  might as well abandon.

8        MR. NOVIKOFF:  I think your Honor just made my point.

9  If the documents that they received was insufficient for

10  whatever reason --

11        THE COURT:  That's an if.

12        MR. NOVIKOFF:  -- I think the Court can take a look at

13  it.

14        THE COURT:  No, I can't.  By looking at that document,

15  I cannot say that that document is insufficient to abandon the

16  claim.  You did abandon that claim based on that document.  You

17  can't ask me to say that is the only conclusion one could draw.

18  If that was the only conclusion one could draw, you would still

19  be in state court.

20        MR. NOVIKOFF:  I will get to that in one second.  If

21  you can draw two conclusions, then one is reasonable.  The

22  reasonable conclusion was --

23        THE COURT:  You have to give me that factual scenario.

24  I don't have that factual scenario.  I can't say it could have

25  been the way the defendant says it happened or the way the

1    plaintiff says it happened so I have to dismiss the plaintiff's

2    case.  That's not the way it works.  He gets the benefit of the

3    two possible scenarios, not you.

4            MR. NOVIKOFF:  Fair enough, your Honor.

5            My final position, if you will indulge me two minutes,

6    is that we spent a considerable amount of time, and I

7    appreciate the argument, I really do, on materiality.  The case

8    law, while it is not absolutely immune, it is very strong.  The

9    Second Circuit and the cases that have addressed this issue,

10   where the judgment debtor is protected by the state court,

11   where it is protected by the judge, even in instances where it

12   is frivolous conduct and they are protected by the

13   administrative law judge for frivolous conduct, a state judge

14   for finding frivolity, the purpose of the FDCPA has been

15   satisfied.

16           THE COURT:  The language you are relying on is in

17   bankruptcy cases.

18           MR. NOVIKOFF:  It is also in Lautman.  The bankruptcy

19   case is here, and I will explain to you why.  The bankruptcy

20   case in Simmons was saying there is a statutory scheme that's

21   set up within the bankruptcy court that protects the judgment

22   debtor.  This case the bankruptcy code protects the judgment

23   creditor by the statutory scheme that is set up, therefore we

24   see no reason why the Fair Debt Collection Practices Act is

25   violated or needs to be put in play.  The C.P.L.R. statute says

1  the same thing.

2        THE COURT:  The case law doesn't support that.  The

3  case law specifically says that statements made and actions

4  taken in furtherance of a legal proceeding are not in and of

5  themselves exempt from liability.  That's what the cases say,

6  that they are not exempt from liability under the FDCPA.  The

7  case law says just the opposite.

8        I'm citing from Gabriele.  There was another case that

9  quoted Gabriele, Lautman.  Lautman says the same thing: to

10  sure, statements made and actions taken in furtherance of a

11  legal action are not in and of themselves exempt from liability

12  under FDCPA.  You want me to rule just the opposite.

13        MR. NOVIKOFF:  No, no.  I agree with your Honor.  I

14  said that at the beginning.  There is no absolute immunity for

15  legal counsel.

16        THE COURT:  Why should you get the benefit of me

17  saying you got immunity?

18        MR. NOVIKOFF:  Because this isn't some complaint

19  that's a filed and it says you owe us the money even though it

20  is statutorily time-barred for ten years.

21        THE COURT:  This is like that.  This says you're owed

22  the money, but you're statutorily barred from taking it because

23  it is my Social Security funds.

24        MR. NOVIKOFF:  5222-a is a statutory scheme that

25  provides the judgment debtor with every conceivable protection.

G3nrarim

1   The statute itself says if we go to a hearing or if I rule on

2   the papers that not only I don't agree with the judgment

3   creditor that he had a reasonable belief or a factual basis,

4   but on top of that, because people can differ on reasonability,

5   it was done in bad faith, I will impose damages against the

6   judgment creditor for actual damages, up to a thousand dollars,

7   attorney's fees, costs.

8           I believe what Lautman is saying and citing to the

9   Second Circuit in the bankruptcy case in Simmons, it is saying

10  where the statutory scheme certainly protects a judgment debtor

11  in state court and the judgment debtor has those protections

12  afforded by the state court system, and in this case they do

13  because the statute provides it, the purpose of the FDCPA in

14  order to protect the judgment debtor is satisfied.

15          THE COURT:  But no federal court has ruled that way

16  outside of the context of bankruptcy.

17          MR. NOVIKOFF:  I think Lautman.

18          THE COURT:  Lautman says just the opposite.  I just

19  quoted you Lautman.  Lautman said, "To be sure, statements made

20  and actions taken in furtherance of a legal proceeding are not

21  in and of themselves exempt from liability."

22          MR. NOVIKOFF:  Lautman goes on to say in this context

23  that the purposes of FDCPA were satisfied because they were

24  able to avail themselves of the protections of the state court.

25  I could read from Lautman, your Honor.

1      THE COURT:  Tell me this, and then we won't exhaust

2  you any further.

3      MR. NOVIKOFF:  I'm not exhausted.  I'm enjoying this,

4  your Honor.

5      THE COURT:  You have the burden on this motion.  Tell

6  me what protection the plaintiff had from what did take place

7  if what they claim took place did take place.  If they gave you

8  sufficient information that convinced you that these were

9  exempt funds that you had seized and then you told them that

10  you are still not going to release the funds because you say

11  they aren't exempt funds, and then you go to court and instead

12  of holding a hearing you decide that you are going to abandon

13  the case, tell me how the plaintiff could have changed that

14  scenario.

15      What could the plaintiff have done in order not to be

16  exposed, to be put in a situation where the plaintiff had to

17  make a choice of whether or not they were going to come up with

18  the money or give you their Social Security money or that they

19  are going to have to go to court and see you that day in court?

20  Tell me what protections in the statute would have protected

21  them from what is generally at issue in this case.

22      MR. NOVIKOFF:  Very simple.  He showed up in court

23  that day.

24      THE COURT:  Right.

25      MR. NOVIKOFF:  Hold on.  I'm not finished.  He showed

1    up.  Gutman Mintz's attorney said, you know what, to use your

2    scenario, yeah, you're going to show me the same thing you

3    showed me three weeks ago?  Okay, I'm withdrawing the

4    complaint.  The presiding judge is there.  Your Honor, that's

5    not right, they had no good faith, they acted in bad faith, I'm

6    not letting them withdraw their motion.  The statute provides

7    that if they do this in bad faith, I'm entitled to actual

8    damages, attorney's fees --

9                THE COURT:  You really think we should expect that

10   that is the position an unsophisticated consumer should take?

11   I'm not even sure that is a position that the consumer's lawyer

12   would take if you were in court saying we are going to abandon

13   the case.

14               MR. NOVIKOFF:  The consumer's lawyer may not take that

15   position because, as lawyers, we know, okay, if I'm going to

16   force his hand, then the other attorney may come up with stuff

17   and I may lose.

18               THE COURT:  Now you're talking about an

19   unsophisticated consumer.  You're saying the unsophisticated

20   consumer is supposed to start saying I want statutory damages,

21   I'm entitled to a hearing, no, I have the right to make them

22   prove it.  With an unsophisticated consumer, why that even

23   cross their mind?  The unsophisticated consumer would probably

24   grab their hat and run out of court as quickly as they can

25   because they know you just decided that they are not going to

1  take their money.  What else would they do?

2         MR. NOVIKOFF:  An unsophisticated consumer is not a

3  dope.  The case law makes clear that they have to be assumed to

4  have knowledge of the issue and the law that is applicable.

5         THE COURT:  I'm not sure that that is true, that he is

6  assumed to have knowledge of the law.  It is supposed to assume

7  just the opposite, that they are not sophisticated in the law

8  and they don't have any knowledge of the law, all they know is

9  that somebody is knocking on their door or calling them up on

10  the phone trying to collect money they say is owed and they

11  have no idea how they are supposed to defend themself against

12  this.

13         MR. NOVIKOFF:  I think your Honor is putting Gutman

14  Mintz and all lawyers in a difficult position.

15         THE COURT:  I'm not.  You may win.

16         MR. NOVIKOFF:  The fact is that we have to win.

17         THE COURT:  What is your scenario?

18         MR. NOVIKOFF:  Here is the position.  Let's take it

19  out of this context.  Let's say there was a reasonable belief.

20  We think there is, but let's assume there is.  They make their

21  motion.  They show up in court.  Now this attorney gets in

22  front of the judge.  Maybe he has a bad history with the judge,

23  maybe the judge is having a bad day.  There could be multiple

24  factors.

25         He is saying to himself okay, now, I think the best

1  course of conduct for my client from an economic standpoint,

2  from every other standpoint -- and that's everything we do on a

3  daily basis, it's not just the law, it's the money aspect of it

4  as well -- okay, here I go.  Even though I think I have a

5  reasonable basis, even though I know I didn't do this in bad

6  faith, I'm in front of Judge X, he's going to kill me, you know

7  what, it's just not worth it anymore.

8          THE COURT:  That's what the depositions demonstrate?

9          MR. NOVIKOFF:  With all respect, I read the esteemed

10  Judge Daniels' opinion in that Gutman case from six months ago,

11  and he has said X, Y, and Z, so if I abandon this or if I

12  withdraw my motion, I have to wait until summary judgment to

13  defend myself in what will be an FDCPA proceeding.

14          THE COURT:  How am I supposed to determine that the

15  facts happened the way you just said?

16          MR. NOVIKOFF:  My argument is (1) what took place when

17  he withdrew the motion is irrelevant to the question of whether

18  the communications themselves were materially --

19          THE COURT:  No, it is not irrelevant.  You would be

20  arguing just the opposite if what had happened when they got to

21  court is that he stood in front of the judge and quoted the law

22  and the facts that supported their position.  You would be

23  saying, Judge, Judge, they didn't abandon their position, they

24  had a good-faith belief to go forward and they went forward and

25  they articulated on the record what that good-faith belief was.

1    You would be arguing to me that that is not irrelevant.

2            MR. NOVIKOFF:  I would acknowledge, your Honor, if

3    that associate made that decision, we wouldn't be here right

4    now because I don't think any judge in that scenario could find

5    against my client.

6            THE COURT:  It doesn't mean the plaintiff wouldn't

7    have sued you.

8            MR. NOVIKOFF:  Right, but we would prevail on the

9    pleadings.  I think under that scenario there would be no

10   issue.

11           THE COURT:  So you can't say it's irrelevant.  That's

12   the argument you made, that it's irrelevant.  It's not

13   irrelevant.  You just said it would be determinative of the

14   whole case.  That doesn't make it irrelevant.  That makes it

15   very relevant.

16           MR. NOVIKOFF:  I will have to look at the transcript

17   and see what I said, your Honor.

18           My last point is the statutory scheme.  If Lautman and

19   the Simmons case mean anything, it means two things.  (1) While

20   not absolutely immune, the courts will look at the underlying

21   circumstances of the state court litigation and what the

22   lawyers did to determine whether in this specific instance they

23   should not be held liable under the FDCPA, but if there is a

24   state court violation, then go to state court and sue them

25   under whatever statute.  That's the first lesson from Lautman.

1      THE COURT:  The only thing I can look at at this stage

2  is that they decided to take the position that it wasn't

3  exempt, they went to court ostensibly to demonstrate that; when

4  they got to court, they said never mind, and they went home.

5  Those are the only facts that I have.

6      MR. NOVIKOFF:  My second point under Lautman is while

7  not absolutely immune, your Honor, there certainly are

8  circumstances where a court will not find a lawyer liable given

9  the context of the litigation.  As Simmons said in the

10  bankruptcy context, this may be one of those scenarios.

11      What I am arguing, the second point that Lautman

12  teaches us, is that in this scenario this is not GBL, this is

13  not perhaps the equivalent of a rule 11 motion.  In this

14  specific instance there was a precise statutory scheme enacted

15  by the New York State legislature that provided the plaintiff

16  with all the protection that he was entitled to and could have

17  received.  Whether he took advantage of that, okay, maybe he

18  didn't.  But from a service of the FDCPA purpose standpoint,

19  the purposes are not served when 5222-a provides them with the

20  exact same relief had they so chosen to go down that road.

21      That will be it, your Honor.  Thank you.

22      THE COURT:  Let me hear from the other side.  Maybe

23  they want to talk me out of it.

24      MR. KESHAVARZ:  Thank you, your Honor.  I was about to

25  say the typical rule is that when you are winning, you sit

1    down, you don't say anything.

2           THE COURT:  I didn't say you were winning just because

3    I have tough questions for the other side.  If they can

4    withstand those questions, they are going to win.

5           MR. KESHAVARZ:  Let me tell you why the opposite is

6    true, why we should win as a matter of law based on the

7    pleadings, not why there is a reasonable belief.  Two reasons

8    why we should win as a matter of law.

9           One is that the FDCPA is a strict liability statute.

10   The one thing we haven't talked about yet is that they froze

11   his exempt bank account.  Put aside the C.P.L.R. about a

12   reasonable basis, put that aside.

13          THE COURT:  That in itself is not a violation of the

14   statute.

15          MR. KESHAVARZ:  It is.

16          THE COURT:  No.  If they had no reason to know what

17   was in that account, that that account was Social Security

18   funds, they would not be liable.  If that was true, everybody's

19   bank account that gets frozen where part of what is in there is

20   Social Security funds would be strictly liable under the

21   statute.  That's not the rule.

22          MR. KESHAVARZ:  The next sentence I was about to say.

23   In the initial instance, the debt collector is strictly liable.

24          THE COURT:  What do you mean in the initial instance?

25          MR. KESHAVARZ:  The FDCPA allows a bona fide error

1    defense.  If they didn't know that the accounts were exempt and

2    they had specific policies and procedures in place to prevent

3    that violation, then they are not liable.  What I'm saying is

4    in the initial circumstance they are liable and then they are

5    subject to an affirmative defense.  In your Honor's case, as

6    you suggest, they would have a bona fide error defense arguably

7    because they didn't know.

8           But why are they still liable here?  Because when they

9    got the exemption, they had evidence.

10          THE COURT:  I don't have any basis to say that you

11   have alleged a claim that is based on their initial seizure of

12   the funds.  I don't see a claim based on that as you have

13   articulated it.  I see a possible claim based on once the

14   process works itself out and the person is notified that if

15   they are exempt funds and we don't know about it, you are

16   supposed to tell us here is the form to do so, and then the

17   person provides the evidence.  I agree with you, that changes

18   things.

19          But the fact that all of these other protections are

20   in place and procedures are in place, they don't have to do

21   significant research to figure out everything that's in the

22   account when they find an account and somebody owes money.  The

23   process they are supposed to go through is the bank is supposed

24   to notify them of the procedure and the bank is supposed to

25   notify them that certain things are exempt, and then it is the

1    plaintiff that makes the decision whether they want to claim

2    that anything that is in there is exempt.

3          The reality is it is not a strict liability statute to

4    the extent that even if the plaintiff doesn't say that these

5    are my exempt funds, somehow they are liable even though they

6    didn't fill out the form and come back to them.  So they are

7    not at fault, they can't possibly be at fault, until they get

8    the form.

9          MR. KESHAVARZ:  Let me move on to the next one.  But

10   to finish up on this, when they get the form from the consumer

11   with some evidence that will put them on notice that the

12   account may be exempt, that knocks out their bona fide error

13   defense because they have a reason to believe that the funds

14   may be exempt.  At that point they act at their peril to object

15   to the exemption.  I don't care about the reasonable basis.

16   That knocks out the bone side error defense entirely.  They are

17   then strictly liable.

18         If they want to make the bungee cord jump and say we

19   are going to find out if it's exempt or not, if they lose, if

20   the fact-finder in this case determines that that money in that

21   account was in fact exempt, then they are liable in the first

22   instance.

23         THE COURT:  Right, if they knew that the money was

24   exempt.

25         MR. KESHAVARZ:  No.  The point I'm trying to make is

1    this is a question of fact for the fact-finder in this

2    instance.

3          THE COURT:  It depends on the facts.  If the plaintiff

4    filled out the form and said I want to tell you that all my

5    money in my account is exempt because nothing comes in to that

6    account but Social Security funds, you cannot argue that the

7    only legitimate response at that point is for them to say, okay

8    bye, I'll release the funds.

9          MR. KESHAVARZ:  I'm not saying that.

10          THE COURT:  Otherwise, they are strictly liable.

11    That's not the way it works.

12          MR. KESHAVARZ:  I'm not saying that.  What I am saying

13    is that when they have a basis to believe that it may be

14    exempt, they make the objection at their peril.  If they are

15    wrong and if the fact-finder in this case determines that the

16    money was in fact exempt, then their objection to the exemption

17    to restrain the money is an FDCPA violation.

18          One question for the fact-finder here in this case is

19    was the money in fact exempt.  If the fact-finder determines in

20    this case that the money was exempt, then their freezing of the

21    account and maintaining of the freezing of the account is an

22    FDCPA violation right there and then because they no longer

23    have a good faith basis, they are taking a risk that they are

24    right.

25          THE COURT:  I'm not sure I can agree with that broad a

1   principle.

2        MR. KESHAVARZ:  The case is Courier.

3        THE COURT:  You can't say it depends on their bad

4   faith basis and at the same time say that simply because the

5   plaintiff says it's exempt, that they have no protection.  If

6   the plaintiff says this is Social Security, my only deposits

7   here are Social Security deposits, and then you look at the

8   bank records and the bank records say this is a deposit from

9   Trump Casino, you can't tell me they are stripped of any

10  protection under the statute because they were put on notice

11  that the claim by the plaintiff was that there was exempt

12  funds.  As you articulated, they have to have a good faith

13  basis to believe that it is.

14       If the money says it's coming in from Social Security

15  and the records demonstrate that and you are alluding to that,

16  then maybe that would strip them of the good faith basis.  But

17  good faith basis has to do with what they knew and what they

18  intended; it doesn't have to do with what they didn't know and

19  what they didn't intend.

20       Just because the person says you're not entitled to

21  take my money, that doesn't make them liable to the plaintiff

22  simply because the plaintiff says that.  That's why the

23  plaintiff has to fill out the form and produce the evidence.

24  The person has to give them something that they can base a good

25  faith basis on.

1          The real question is not whether or not they were

2    notified by the plaintiff and that makes them strictly liable.

3    The question is whether or not they were notified by the

4    plaintiff and the plaintiff supplied sufficient documentation

5    that a reasonable debt collector would have to say, well, maybe

6    we ought to hesitate here and release the funds or maybe we

7    ought to do something quickly to figure out whether or not this

8    is right.  That's a different question.

9          I can't accept it if your argument is simply because

10   they said it and gave half the documentation or if they took

11   out every other page that shows the other deposits in the

12   account.  They argue that we went to the bank and the bank came

13   back to us and said some of these deposits are exempt and some

14   aren't.  That doesn't give them a good faith basis to believe

15   they all are, in and of itself, just because the plaintiff says

16   it.  Right?

17         MR. KESHAVARZ:  Let me go to the second argument then.

18   If you don't like that argument, I have another.

19         THE COURT:  I didn't say I don't like it.  I just want

20   to know if you have an answer to that.

21         MR. KESHAVARZ:  I do, but let me make another easier

22   argument.  I can see where that is going.  Let me make an

23   argument about the reasonable basis.  Do they have a reasonable

24   factual basis that they have to put in the affidavit?  Their

25   basis has to be listed in the affidavit.  The only basis they

1   put in the affidavit is not that they don't believe the

2   statement.

3           Their two reasons for the objection:  Items 14 and 15

4   of their affidavit say they don't have the bank statements

5   going back to a zero balance, which is not required, and they

6   failed to prove that the consumer never commingled with exempt

7   funds.  Those are the only two factual assertions in their

8   objection as to why they were challenging it.  They can't go

9   outside of this.  This is the only factual basis they have.

10          THE COURT:  They stated that where?

11          MR. KESHAVARZ:  In their affidavit objecting to the

12  exemption.  The rule says you have to provide facts.  Those are

13  the only two facts they asserted.

14          THE COURT:  That was with their filing in the state

15  court?

16          MR. KESHAVARZ:  Exactly right, only two facts.  They

17  are limited to those two facts.

18          They don't challenge the authenticity of the bank

19  statements.  This is why they lose as a matter of law.  It is

20  because the first dollar out is assumed to be nonexempt money.

21  How do we know that?  C.P.L.R. 5222-a(c)(4) talks about a

22  phrase called the lowest intermediary balance principal.  In

23  English that means --

24          THE COURT:  First in, first out?

25          MR. KESHAVARZ:  The first money out is nonexempt

1   funds.  It's just arithmetic at this point.  That is why there

2   is no reasonable basis.  What does the arithmetic say?  The

3   arithmetic, as opposing counsel has admitted, is that there are

4   11 deposits of 785.  11 times 875 is 8600.  They have only

5   $4,000 left in the account when they freeze it.

6        I don't care whether he had a million dollars before

7   then.  All of the money that is taken out, the first dollar is

8   a nonexempt money.  Since 8600 is greater than 4,000, as a

9   matter of arithmetic, all of the money is exempt.  It's

10  arithmetic.  There's no ifs, ands, or buts about it.  That is

11  the rule in that section.

12       You didn't go accounting school, I didn't either.  I

13  had to figure out, what does lowest intermediary balance

14  principle of accounting mean?  I don't know what it means.  I

15  Googled it.  Fortunately, the Tenth Circuit has an accounting,

16  a factual matter, about what that phrase means as an accounting

17  matter.  I have the case for the court and for opposing

18  counsel.  It is In re Bryan Foster, 275 F.3d 924, footnote 1.

19  It explains what I just said: the first dollar out is nonexempt

20  funds.  Then it gives examples.  That is an accounting basis.

21       So there is no factual dispute that as a matter of

22  arithmetic the money is all exempt.  There is no reasonable

23  basis.  As a matter of arithmetic, we win.  That knocks out

24  that argument entirely.  That's why I think we win as a matter

25  of law.

1          Let me go on to the other issues that they raised.

2     They raised that the bank shouldn't have restrained the money.

3     The whole reason for having the Fair Debt Collection Protection

4     Act is that the consumer gets to challenge the debt collector

5     even if the bank makes a mistake and freezes his exempt funds.

6     That's the whole reason you have that.  That's the reason you

7     can exempt it.  Their argument would make the statute useless.

8     What's the purpose of it if you could always rely on what the

9     bank says?  The bank froze it, so it must be exempt.

10          They have to have a reasonable belief.  And they have

11    to state in their affidavit the amount of such nonexempt funds.

12    They didn't state in their affidavit what amount they thought

13    was nonexempt or why.  That is one of the requirements.

14          THE COURT:  I thought the bank indicated that certain

15    funds were and certain funds weren't.

16          MR. KESHAVARZ:  It's the form.  The form that they

17    send says if it's exempt, don't freeze it.

18          THE COURT:  I thought the banks came back with a

19    certain percentage or a certain amount of that was not exempt.

20    I thought they said it was partially exempt.  I don't know

21    where I got that.

22          MR. KESHAVARZ:  No, your Honor, not at all.  We don't

23    know what to provide to the information subpoena because we

24    haven't gotten that in discovery yet.  They had the bank

25    statements, the deposit history.  It shows what it shows.  They

1    don't orally say anything.  All they do is give the consumer an

2    exemption form.  Technically, maybe they are not supposed to

3    freeze it in the first place.

4         THE COURT:  The bank is held harmless because it is

5    not the bank's act.

6         MR. KESHAVARZ:  Exactly.

7         THE COURT:  It is the debtor's action, and the bank is

8    acting pursuant to a judgment of a court.

9         MR. KESHAVARZ:  Yes.

10        THE COURT:  The bank is not making any determinations

11   one way or the other, nor is it their responsibility to go

12   behind the judgment unless they themselves have a clear

13   indication that they should notify the parties that they are

14   not freezing this account because they have some contrary

15   evidence that it is not that person's account or some other

16   reasonable basis to respect the judgment.

17        MR. KESHAVARZ:  I agree.  But that seems to be one of

18   their arguments.  Let me move on to the next argument.

19        Their argument is the consumer is protected by state

20   law remedies.  Their argument essentially is that state law

21   protections preclude FDCPA protections.  That flips the statute

22   on its head.  The FDCPA, in it statement of purpose, explicitly

23   says the existing state law remedies are insufficient to

24   protect consumers.  They want to presuppose that the existing

25   laws provide enough protection.  The FDCPA says it doesn't.

1          Let me give you examples of cases where the consumer

2     has remedies in state law but it doesn't preclude them from

3     asserting their federal rights.  Let's talk Sykes, which is a

4     class action which was recently affirmed a few weeks ago by the

5     Second Circuit.  There are a few allegations, one of which is

6     the sewer service affidavit and the person gets a default

7     judgment.

8          THE COURT:  That's not this.

9          MR. KESHAVARZ:  Under C.P.L.R. the consumer can

10    challenge that and even get sanctions against the debt

11    collector.  They have protections under the C.P.L.R.  Under

12    their argument, because they have protection under the

13    C.P.L.R., you don't need the FDCPA.

14         THE COURT:  That's a different situation.  In sewer

15    service it's a different scenario where in most cases the

16    plaintiff isn't even aware that anything is going on.

17         MR. KESHAVARZ:  But when the consumer becomes aware it

18    and they want to challenge, they have remedies under the

19    C.P.L.R. to get sanctions against the other side.  My point is

20    just because the C.P.L.R. has those remedies of those sanctions

21    doesn't mean you can't bring an FDCPA claim.  You can bring

22    FDCPA claims for the unconscionable act of using a false

23    affidavit.  State laws don't preclude federal laws.

24         Another case I cite in my case are Polanco and Okyere

25    2.  In Polanco, a debt collector got a sewer service judgment,

1    the judgment is vacated, the court orders the collector to

2    return the money forthwith, the debtor collector doesn't.  The

3    consumer certainly has a state court remedy by holding the debt

4    collector in contempt of a state court order.  The same thing

5    happened in Okyere 2.  Because they have those remedies doesn't

6    preclude their ability to bring a case in federal court.

7            THE COURT:  Those are all sewer service.

8            MR. KESHAVARZ:  In the initial instance, it was.  But

9    that wasn't the issue.  The issue was the judge ordered the

10   money to be returned forthwith and they didn't comply.  The

11   consumer could move for contempt easily.  State court remedies

12   are they get sanctions, attorney's fees, they can get damages.

13   The fact that they can enforce their rights under state law for

14   contempt does not preclude them from asserting their FDCPA

15   rights.  The FDCPA says existing state laws are not sufficient.

16           Another example, Cameron -- those are all my cases,

17   I'm glad to say -- debt collector duping a consumer into

18   signing a stipulation on a time-barred debt.  The consumer has

19   state law remedies there.  The consumer can challenge the

20   stipulation on the basis of fraud.  The consumer can defend the

21   state collection act because it is time barred.  Because they

22   have those remedies doesn't mean that they can't bring an FDCPA

23   suit.  All these cases have survived motions to dismiss.  So

24   you don't preclude your federal rights because you have some

25   state rights.

1           THE COURT:  It's difficult for me to say that that is

2   determinative because in almost any scenario a consumer has

3   some state right.

4           MR. KESHAVARZ:  My point.

5           THE COURT:  By definition, you could sue somebody for

6   fraud.  I can't imagine that for any activity that is

7   prohibited by the federal statute, there isn't a cause of

8   action that you could bring in the state court.

9           MR. KESHAVARZ:  That's my point.  They seem to be

10  arguing because the C.P.L.R. allows you to move for sanctions

11  for a bad faith objection to a garnishment, you don't need the

12  protections of the FDCPA because you have that state court

13  remedy.  My point is that just because you have a state law

14  remedy doesn't preclude you from asserting FDCPA rights.

15  That's why their argument fails, in my opinion.

16          Let's move to the materiality.  This was the issue of

17  the "or," it's this or that.  Let me tell you why they violate

18  both of the clauses and why the case law says they do.  Assume

19  for a second that the elements of Gabriele are controlling as

20  to what constituted material misrepresentation.  It's a summary

21  order, but assuming that for a second, they violate in two

22  manners.  One, the communications and practices that could

23  mislead the putative debtor as to the nature and legal status

24  of the underlying debt violate the FDCPA.  Let me explain why

25  in my view Gutman Mintz violated that.

 1          First, they represented to Mr. Arias that the money in

 2     his account is subject to being seized, that they have a basis

 3     for believing that it is not exempt.  That is the same reason

 4     why in Samms, a collection lawsuit making a demand of the court

 5     for attorney's fees, Judge Rakoff said that misrepresents the

 6     nature and legal status of the debt because it suggests that

 7     they have that right when they don't.

 8          The second reason why it violates the nature and legal

 9     status is in Cameron, in Baptist, which I cite in my motion.

10     The filing of a time-barred lawsuit and the serving of a time-

11     barred lawsuit, the cases say that implies to the least

12     sophisticated consumer that there may be a legal ability for

13     them to get a judgment.  Those courts say if there is a statute

14     of limitations defense, then making that implied

15     misrepresentation to least sophisticated consumer that they may

16     have a right to a judgment misrepresents the nature and legal

17     status of the debt.

18          THE COURT:  The argument from the other side is that

19     this case is not about whether there is an enforceable debt.

20     That's not what this is about.  This is not about whether or

21     not they misrepresented whether there was an enforceable debt.

22     Unquestionably there was an enforceable debt.  This case is

23     about how that debt is to be satisfied.

24          I understand the argument.  Unless I'm

25     mischaracterizing the argument, their position is they say I

1    should interpret the statute to say it deals with whether or

2    not you're telling somebody that they owe money and you have

3    the right to collect it, that's what that part of the statute

4    is dealing with.

5         In this case that is not what we are dealing with.

6    Clearly there was a debt that was owed, there was a judgment

7    that was obtained, and clearly that debt was collectable.

8         MR. KESHAVARZ:  Yes.

9         THE COURT:  The question is whether or not you can

10   take these funds to satisfy that debt.  They are saying that is

11   not encompassed in the language of the statute, that you are

12   giving too broad a reading of that language because the

13   language talks about whether there is an enforceable debt and

14   no one misrepresented that there was in fact an enforceable

15   debt.

16        MR. KESHAVARZ:  I don't disagree with that.  My point

17   is to argue by analogy that Gutman's representation that the

18   money in the account may be subject to seizure even though it's

19   exempt, that misrepresentation is similar to, different from

20   but similar to, the misrepresentations and collections lawsuit

21   by which they may be able to get a judgment against the

22   consumer.

23        THE COURT:  The question is not whether it is similar.

24   The question is whether or not that is what that part of the

25   statute covers, that that language is supposed to cover this

1   kind of issue, and not that somehow I can carve out some

2   similar cause of action if it's not covered by the statute

3   because it's sort of wiped out.  A claim can't be made because

4   it's like some other right you have in the statute.  It's got

5   to be part of that right that you would be given by the

6   statute, unless you can convince me otherwise.

7            MR. KESHAVARZ:  That is the phrase in the statute.

8   Actually, the materiality requirement, that's not actually in

9   the text of the statute that the court poses.  Nature and legal

10  status of the debt.  My argument is by analogy, nature and

11  legal status of the debt, arguing that it is not exempt when it

12  is is similar to arguing that you can get a judgment when it's

13  not.

14           THE COURT:  Whether or not you are collecting it from

15  Social Security doesn't change the nature of the debt or the

16  legal status of the debt.  That is their argument.

17           MR. KESHAVARZ:  It misrepresents your legal rights.

18  1692(e)(2)(A) or (B) says misrepresenting the legal status or

19  the rights of the consumer in relation to the debt.  It's your

20  legal rights.  That is the phrase in there.

21           THE COURT:  Do you have any case that is interpreting

22  it this way with regard to collection of exempt funds?  I

23  always hesitate to be the first judge to say it.

24           MR. KESHAVARZ:  I like our analogy which was Okyere,

25  freezing, failure to return money; Cameron and Baptist saying

1  to the consumer that they have a right to a judgment, that is

2  similar.  The answer is no, I don't know of one in the context

3  of specifically exempt funds.  I don't know that specific

4  context, in all candor.  My argument is that it is similar.

5      Let me move on to my next argument.  That is the first

6  part of the "or."  Let me go to the second part of the "or,"

7  which I seemed to be winning before I stood up and hopefully I

8  will continue to be winning on when I sit down.  That is, is it

9  a communication or practice to impede the ability to respond to

10  or dispute the collection?  That's the question.  If Gutman

11  Mintz did not file the objection, the restraint would be void

12  after seven days as a matter of law.  If they didn't file the

13  objection, then the consumer would have the money.

14      By filing the objection with no reasonable factual

15  basis because of arithmetic, they impeded the ability to

16  respond or dispute the collection.  In other words, they

17  couldn't get money.  They had to go to court in order to

18  respond to their collection activities.  That's why it

19  challenges their ability to dispute the debt or challenge their

20  collection methods, because they have to go to court because of

21  their objection to the exemption.

22      THE COURT:  They would have to go to court either way.

23      MR. KESHAVARZ:  No.

24      THE COURT:  How would they enforce their rights other

25  than going to court?

 1           MR. KESHAVARZ:  As soon as the consumer sends the

 2     objection form, fills out the claim form, in this case they

 3     also attached statements, if Gutman Mintz does not file an

 4     exemption objection within seven days, the restraint is gone as

 5     a matter of law in the statute.  What they did is they filed

 6     the objection.  That's what made it harder for them to

 7     challenge the collection of the debt.  Now they had to go to

 8     court.  If they didn't file the objection, they wouldn't have

 9     to go to court.  That's why I think it meets the second part of

10     the "or."

11           THE COURT:  I understand.

12           MR. KESHAVARZ:  One thing that they didn't dispute in

13     their response, their reply, is that the debt collector, after

14     Mr. Arias sent the debt collector the bank statements showing

15     as a matter of arithmetic all of the money in there is exempt,

16     he talked to them on the phone and the debt collector said

17     that's nice, you still have to pay me.

18           THE COURT:  That's not a misrepresentation.

19           MR. KESHAVARZ:  You still have to go to court to

20     challenge the exemption.  That's not true.  It's in the

21     complaint, the exact phrasing.  I don't want to misstate it.

22     It's in the complaint.  I think the exact phrase is:  Oh, you

23     still have to pay it; if you want to challenge it, you have to

24     go to court.  That's not true.  If it's exempt, they don't have

25     to go to court.  So it's misrepresenting his legal rights and

1    making it more difficult to challenge the collection activity.

2         That is not in the complaint.  That's not in the

3    litigation activity.  That's on the phone.  There is no

4    dispute, I don't think there is a dispute, that that violate

5    the FDCPA for misrepresenting the legal status of the debt.

6         THE COURT:  It wouldn't violate it unless that was

7    untrue.

8         MR. KESHAVARZ:  It would be untrue.

9         THE COURT:  How was that untrue?

10        MR. KESHAVARZ:  They wouldn't have to go to court to

11   challenge the exemption absent Gutman's failure to comply with

12   the FDCPA in that they are failing to show a reasonable factual

13   basis for the objection.

14        THE COURT:  That's one way to characterize it.

15   Another way to characterize it from their point of view is that

16   they wouldn't have to go to court if they didn't take a

17   position that the money was still collectable from that source.

18        MR. KESHAVARZ:  That would be a fact question about

19   what exactly the phrasing was.

20        One thing that they didn't mention is a recent Second

21   Circuit case from a few weeks ago, DiMatteo.  I have that in my

22   case.  That is a collection lawsuit trying to collect rent.  It

23   says that the debt collector is entitled to attorney's fees.

24   That wasn't true.  The consumer was actually represented by an

25   attorney in the debt collection defense case.  The Second

1 Circuit says if that's not true, if in fact you do not have a

2 right to obtain those attorney's fees in collection, that's an

3 actionable misrepresentation.

4          THE COURT:  I think I read that case, but I don't know

5 how that is related to the representation fee.  That had

6 nothing to do with the debt.  That's what I understood the case

7 to say, that the attorney's fees is not the debt.

8          MR. KESHAVARZ:  No.

9          THE COURT:  I'm not sure how I'm supposed to use that

10 case here.

11          MR. KESHAVARZ:  As I recall, the Second Circuit said

12 that that violated (e) and (e)(2)(A) or (B) about the legal

13 rights.

14          THE COURT:  Right.  Well, I didn't think it was legal

15 rights.  I thought it was a misrepresentation that they were

16 entitled to the attorney's fees.

17          MR. KESHAVARZ:  Yes.

18          THE COURT:  I'm not sure how that I extend that to

19 what you claim misrepresentation was here.

20          MR. KESHAVARZ:  It's misrepresentation pleadings that

21 are still actionable.  Even though it is in pleadings, even

22 though the consumer is protected by the court and in fact

23 protected by their own attorney, it is still actionable.  That

24 knocks out all of their argument about Simmons and you have the

25 court personnel protecting the consumer.

1          THE COURT:  You are going back to the state law

2     protection argument?

3          MR. KESHAVARZ:  Yes.  That is Second Circuit from a

4     few weeks ago.  So that knocks out those issues.

5          That's it.  I have the Foster case about arithmetic.

6          THE COURT:  Do you have an extra copy?  Or just give

7     my law clerk the citation.

8          MR. KESHAVARZ:  It's 275 F.3d 924.  I also have a

9     highlighted section of the C.P.L.R. provision.

10         THE COURT:  What is the name of the case?

11         MR. KESHAVARZ:  It's In re Bryan Foster, Tenth

12    Circuit.  There are two Tenth Circuit decisions.  This is the

13    one that is at 275 F.3d 924.  I'll give, if I may, the

14    provision of the C.P.L.R. which is 5222-a(c)(4) that uses the

15    same phrase.

16         THE COURT:  Okay.

17         MR. KESHAVARZ:  Unless the Court has questions for me,

18    that's all I have.

19         THE COURT:  No.

20         Mr. Novikoff, did you want to add anything?

21         MR. NOVIKOFF:  The only comment I will make, I think

22    plaintiff's counsel, respectfully, is confusing many things.

23    While I disagree perhaps with some of the conclusions I think

24    your Honor is drawing, and I won't repeat them, this really

25    comes down to what 5222-a sets forth.  It's going to be either

G3nrarim

1    for this Court on summary judgment -- we are hoping that we

2    win.  But assuming we don't prevail on our 12(c) motion, it is

3    going to be for this Court on summary judgment or for the trier

4    of fact if there is an issue of fact to really just look at the

5    three pages Gutman Mintz received from the plaintiff and

6    whether or not that document was sufficient or was insufficient

7    in order to give Gutman Mintz a reasonable basis to at least

8    assert to the state court judge, hold on, we don't think that

9    based upon these documents alone all the funds are exempt.

10           THE COURT:  That's not exactly accurate.  That's not

11   the way that determination is going to be made.  That

12   determination is going to be made partially, if not more

13   significantly, based on what the witnesses say they did with

14   that document.

15           MR. NOVIKOFF:  What the Gutman people said they did?

16           THE COURT:  Yes, what the Gutman people said and what

17   they concluded from that document.

18           MR. NOVIKOFF:  Right.

19           MR. KESHAVARZ:  If the deposition of the Gutman

20   attorney or their email to their associate is that we think

21   that this is exempt and we don't have any reason to believe

22   that it is not exempt, what's going to be more compelling to a

23   trier of fact, or on a summary judgment motion, is how they

24   evaluated this document when they got it?  Not looking at the

25   document and me or the jury trying to make a determination

1   whether we think it is reasonable or not reasonable to come to

2   a conclusion.  We have to first figure out what conclusion they

3   say they is true from the document.

4            MR. NOVIKOFF:  That's right.

5            THE COURT:  They would also have to explain, as you

6   said, why that conclusion changed when they got to court.

7            MR. NOVIKOFF:  Yes, I agree with your Honor, it's not

8   just we think your Honor could just look at the document and

9   say it's a little suspect.  But if we don't prevail on the

10  other arguments and the Court doesn't grant the 12(c), yes,

11  there are going to be depositions taken of the relevant people

12  at Gutman Mintz who were involved in analyzing the document and

13  making the decision to file an objection.

14           What plaintiff's counsel is saying, and he is

15  completely wrong on this, is that basically once the plaintiff,

16  the judgment debtor, says these are exempt and here are three

17  pieces of paper explaining why, the judgment creditor's lawyer

18  has to say okay, we believe you, and we are not even going to

19  analyze it.  That is completely wrong.

20           I would agree with your Honor that if we don't prevail

21  on this, then someone from Gutman Mintz is going to have the

22  explain to your Honor in the first instance, and then perhaps

23  to a jury in the second instance, what they were thinking when

24  they came to it.  But what I would then say, and I guess this

25  is where your Honor and I respectfully disagree, and perhaps I

1    will convince you either later or at some other time, is that

2    if they had on day one a reasonable belief that the documents

3    that they received were insufficient or hearsay or suspect,

4    didn't really comply with the statute, then what they did on

5    day five in court is not relevant.

6         THE COURT:  It might reflect that position or detract

7    from that position.

8         MR. NOVIKOFF:  Right.

9         THE COURT:  You would be arguing to me as a stronger

10   argument, and you would clearly utilize it if their position

11   was continuously consistent, you would be making the argument

12   that they made that determination and never changed that

13   determination if those were the true facts.  You are not in a

14   position to make that argument.

15        MR. NOVIKOFF:  I don't want you to think that I'm

16   pushing a really big horse up a hill on this one, but I don't

17   think that would be accurate.  If they did, this is how it

18   would play out.  If they did, if the attorney that day was in

19   court and said no, you know what, we are going to pursue this,

20   let's have a hearing, then there would have been three

21   scenarios that came out of it.

22        One, the state court judge, after holding an

23   evidentiary hearing or looking at the papers and looking at the

24   document itself, would have said no, even though you had a

25   reasonable belief that these documents weren't sufficient, I

1  find that they are sufficient, I find that all the funds are

2  exempt, release the money.

3          The second scenario would be no, I see your point,

4  these documents are somewhat suspicious or they are not

5  complete or they are not the bank records, so I'm now going to

6  hold an evidentiary hearing.  That would spin off two other

7  results after an evidentiary hearing: either the funds are

8  exempt or not exempt.

9          The third scenario would be no, these documents are

10  clear on their face, you are completely mistaken as to you had

11  a reasonable basis, so you acted in bad faith and I'm going to

12  now award attorney's fees, costs, damages.

13          My point is in response to your Honor's question, had

14  the attorney for Gutman Mintz pursued that road, I would not

15  necessarily have needed to explain anything to your Honor about

16  what transpired that day because the state court judge would

17  have rendered the issue moot.

18          THE COURT:  But you would be arguing to me that they

19  took that position and they never changed that position.

20  That's what you would be arguing to me.  It would be mal-

21  practice not to argue that.  You would have to say they

22  consistently took that position.  That obviously would be in

23  your favor as opposed to they went back and forth on that

24  position.

25          I don't know what they represented to the court after

1    their discussion in the hallway.  I don't have any basis to

2    conclude that they represented anything to the court about how

3    they evaluated this other than they were just not going to go

4    forward.  There are a lot of different scenarios that could

5    have either further supported your position or detracted from

6    your position.

7         If they went back into court and said, your Honor, we

8    have looked at this, even though we still think that this

9    doesn't satisfy any reasonable attorney that this is exempt

10   funds, we have decided that this guy is a nice guy, doesn't

11   have a whole lot of money, we will try to find the money

12   somewhere else.

13        They could have said anything.  They could have come

14   back and said he's lying, or they could have said, judge, this

15   is not adequate, or they could have said, judge, as you said,

16   all the things you say were reasonable things to have motivated

17   them to take whatever actions they took.

18        But I don't have that record.  There is not an

19   undisputed record here that they came back to court and said,

20   judge, even though we still take the position that these are

21   not exempt funds, we've decided we are not going to pursue

22   these funds, we are going to pursue other funds.  I don't have

23   any of that.

24        Those kinds of things are evidence of good faith or

25   bad faith.  They are evidence of knowledge or lack of

1    knowledge.  They are evidence of the intent to take advantage

2    of an unsophisticated debtor or to not take advantage of an

3    unsophisticated debtor.  I don't know what they were thinking.

4          MR. NOVIKOFF:  My only other point in response to what

5    plaintiff's counsel said is in regard to the aspect of our

6    motion that refers to Lautman and Simmons.  The cases I believe

7    he is citing, and I think your Honor was attuned to it, are

8    cases where there may have been some conduct undertaken by the

9    attorney in litigation that were clearly out of bounds and

10   there was no specific, quote-unquote, statutory protection that

11   was present, whether it was sanctionable, whether it was a GBL

12   violation.

13         In this case it's different.  It is more akin to the

14   bankruptcy case from the Second Circuit.  The state legislature

15   in this instance has specifically -- and the putative judgment

16   debtor doesn't have to go to any other source, common law or

17   statutory -- under this statutory scheme provides the judgment

18   debtor with a quick, efficient remedy in the case of quote-

19   unquote bad faith.  Not just being wrong.  Gutman Mintz

20   wouldn't be subject to damages or the client wouldn't be

21   subject to damages if the court said, you know what, I see that

22   your position was reasonable but nevertheless I conclude that

23   these are exempt funds.  It is only if you acted in bad faith.

24         In that instance and I think in this case the bad

25   faith would have to equate to an FDCPA violation.  I don't

G3nrarim

1   think your Honor or jury could ever find an FDCPA violation

2   without finding a bad faith violation under 5222-a.  My point

3   would be that the statutory scheme provides every piece of

4   protection that the plaintiff wants.

5          We know what this case is about, your Honor.  We know

6   that the FDCPA provides for $1,000 in statutory damages and the

7   universe in attorney's fees.  I don't believe that in the

8   context of when you have a statutory scheme that provides

9   basically the very damages that they could get in federal

10  court, the purpose of the Fair Debt Collection Practices Act

11  would be to allow this going forward.  He could sue in state

12  court under 5222-a or he could sue under GBL.  He could sue

13  under the judicial law against Gutman Mintz.

14         That's my point, your Honor.  Thank you.

15         MR. KESHAVARZ:  If I may?

16         THE COURT:  Quickly.

17         MR. KESHAVARZ:  I have the cases that you asked me

18  about, I couldn't think of them, cases where they find an FDCPA

19  violation to failure to have a reasonable basis to believe the

20  bank account was exempt and it wasn't.

21         THE COURT:  That wasn't what I was asking for.  I'm

22  sure that there are such cases if they didn't have a reasonable

23  basis.

24         MR. KESHAVARZ:  It's footnote 7 page 24.  There are

25  five cases.

1          THE COURT:  I'll look at those.

2          MR. KESHAVARZ:  Thank you.

3          THE COURT:  The only thing that I am going to ask is

4   two things.  One is whether or not you want some opportunity to

5   see if you can resolve this before I decide it.  Two, if I

6   decide this issue, whether or not you want me to go ahead and

7   decide it or whether you want me to write an opinion.  I don't

8   want to make bad law if it is going to be misinterpreted by

9   other people.

10          I think the decision I would have to make is a very

11  fact-specific assessment in this case.  I don't want to be

12  necessarily the case that is cited for general propositions,

13  making earth-shattering pronouncements about these issues,

14  because I don't think that necessarily my determination in this

15  case one way or the other is really going to have a significant

16  expansive view.  I throw that out for you to react to.

17          MR. NOVIKOFF:  My client's position is twofold.  In

18  answer to your first question, we extended an offer of judgment

19  at the beginning of this case.  We went beyond that a few weeks

20  later.  We are always open to any reasonable settlement

21  discussions because we understand if this goes past judgment on

22  the pleading stage, we are going to have discovery, and just

23  like perhaps Gutman's attorney in the state court --

24          THE COURT:  More money than it may be worth.

25          MR. NOVIKOFF:  Exactly, your Honor.  On the second

1  one, not that I ever want to burden your Honor or any other

2  federal judge, but I do think that these issues actually are

3  not as simple as perhaps the normal, run-of-the-mill FDCPA

4  case.

5          THE COURT:  I agree.

6          MR. NOVIKOFF:  We would respectfully request a written

7  decision because we do think these issues are important.

8          THE COURT:  That's fine.  As they say, if I rule

9  against you, you're right, they are going to be citing Gutman

10 as a proposition for something that is not going to be in your

11 favor.  That's the only reason I asked.  It's your motion.

12         MR. NOVIKOFF:  Since I don't have my cell phone with

13 me, can I get back to the Court by the end of the week after I

14 consult with my client on that?

15         THE COURT:  Sure.

16         MR. NOVIKOFF:  Thank you.  I don't want to have them

17 pissed off at me.  I would like to have a written decision, but

18 I'll check with the client.

19         THE COURT:  That's right.  That is usually the way I

20 go.  I can articulate from the bench.  I'm not going to do that

21 here because I'm going to look further at your cases.

22         One thing I can offer to you is that if you would like

23 to, I can refer you to our mediation service if you want to use

24 a mediator, at no cost to yourselves, to try to see if that

25 would be helpful to you to resolve this.  If you don't think

1    that would be useful, then I won't.  But if you want to try

2    that, I can do that in the meantime.

3              MR. NOVIKOFF:  Here is the quandary that we are in

4    right now in response to that request, your Honor.  Again, I

5    don't mean to disparage plaintiff's counsel in any manner.  We

6    all have our jobs to do and we all do them in accordance with

7    what the statutes allow us to do.

8              This case is no longer about the damages to the

9    plaintiff at least as it pertains to the Fair Debt Collection

10   Practices Act.  There have been no actual damages suffered

11   under the FDCPA.  He is entitled to a thousand dollars per

12   statutory violation.  I only see arguably one, maybe two down

13   the road.  For purposes of mediation, really what it comes down

14   to is, at least from the federal claim, how much attorney's

15   fees we are going to have to pay in the event six months from

16   now or nine months from now we lose.  That's why we made an

17   offer of judgment.

18             THE COURT:  As I say, I am not asking you to read his

19   mind.  I'm asking you to tell me what is on your mind.  If you

20   don't think from your position that you have some flexibility

21   and you think that a third party might help you to come to

22   terms, then I'm willing to offer that.  If you don't think it

23   is useful, fine, I'm not going to waste your time or the

24   mediator's time.

25             MR. NOVIKOFF:  I don't know, unless plaintiff's

1 counsel thinks otherwise.  If plaintiff's counsel is serious

2 about settling, he can make a demand that has a reasonable

3 basis for it and we can address it off of that.  Because the

4 statutory damages are so little and I don't see any real actual

5 damages, I don't see what a mediator can do other than to say

6 if you lose and you take this all the way, you are going to

7 wind up paying a ton of attorney's fees.  Thank you.

8          THE COURT:  As I say, that is why a third party

9 usually is helpful, because you guys are not thinking on those

10 terms.  It doesn't make a difference what the money is

11 designated as.  It depends on how much you want to pay and how

12 much they are willing to take.  If you are hesitant to have

13 that discussion, I'm not going to waste time.

14          MR. NOVIKOFF:  For the record, we are not hesitant to

15 have a discussion with plaintiff's counsel if he is willing to

16 tell us what he wants.

17          THE COURT:  That's what usually happens in mediation

18 or even before you get to mediation.

19          MR. NOVIKOFF:  I'm saying let's see if there is an

20 offer on the table or demand, and then we can see if mediation

21 is warranted.

22          THE COURT:  Do you have a position one way or the

23 other on any of these issues?

24          MR. KESHAVARZ:  We are all sophisticated lawyers.  I

25 don't know if I have ever had a case that settled at mediation.

1       But I want to go to one point.  If he thinks this is

2  not an actual damage case, then he is not reading my complaint,

3  paragraphs 83 to 86: inability to sleep, anxiety, fear.  Judge

4  Rakoff recently issued an opinion on very similar facts, Samms,

5  my case, that said my client had the same emotional distress

6  damages.  He said the Second Circuit has upheld garden-variety

7  emotional distress cases damages of up to $100,000.

8       I have recovered well more than that in FDCPA cases

9  just like this.  I'll give him the list of ten cases where I

10  have recovered some actual amount, and then he can talk to me

11  about whether he wants to talk.  I'll be glad to do that.

12       THE COURT:  Before I start settlement discussions with

13  the parties, usually I have to sit here and listen to both

14  sides tell me how strong their case is and why they are so sure

15  they are going to win.  The only thing I respond is that at the

16  end of this case it's likely that one of you is going to say, I

17  wish I had settled.  You can take whatever positions you want

18  to take.  You can be right, you can be sure, but that is not

19  what is going to determine this case.

20       What I'm going to do is over the next few weeks I'm

21  going to go ahead and make a decision.  I'll see to what extent

22  I think I should articulate a position on the relevant issue

23  for others to cite or miscite.

24       MR. NOVIKOFF:  It would be both, I'm sure.

25       THE COURT:  I'm sure.  It always is.  If you think

1  that a mediator would be useful to you, we have very

2  experienced mediators.  It is at no cost to the parties, so

3  that could save you money if you want to use it for free.  You

4  should let me know by letter if the two of you decide you want

5  to do that.

6          Talk to each other first and see if you can come to

7  terms on your own.  You get two opportunities: you get to fight

8  it out or get to work it out.  You have to make your choice

9  first.  If you decide you want to try to work it out with some

10  assistance, I will provide that.  If you decide you want to

11  fight it out, then I will go ahead and resolve this issue.

12          I will wait to hear from other side with regard to

13  these issues within the next ten days.  If I don't hear from

14  you within the next ten days, then I'll just go ahead and make

15  a judgment about this case.

16          MR. NOVIKOFF:  Thank you, you know.

17          MR. KESHAVARZ:  If I may follow up on a couple of

18  pending issues.  One is if discovery can proceed without

19  restriction in the case or not.  Your Honor put some limitation

20  on it.  Opposing counsel has not answered discovery.  Their

21  view is that they don't have to, all they have to provide is a

22  certain number of documents they believe you ordered.  I just

23  need to know one way or the other.

24          If we are able to go forward with unrestrained

25  discovery, that's one thing.  If not, then my second request is

1    that the deadlines be extended for the time period until your

2    Honor makes a decision.  Either one is fine with me.

3         THE COURT:  Have you made the document request?

4         MR. KESHAVARZ:  I made document and interrogatory

5    requests for admissions.  Their view is they don't have to

6    answer them, they only have to produce the documents that the

7    Court ordered last time.  I just need an answer one way or the

8    other.  It does not matter to me.

9         MR. NOVIKOFF:  Your Honor, at the last conference you

10   were very specific that you required us to provide documents

11   relating to Mr. Arias's issue as it relates to Gutman Mintz.

12   We did that.  We served our rule 26.  We may have issues over

13   that, and we can discuss that.  Your Honor was clear that until

14   the decision is made, other discovery was going to be stayed.

15   That's why we haven't addressed it.  But I agree with

16   plaintiff's counsel, if the Court is so inclined, to extend the

17   discovery for the amount of time until we get the decision.

18        THE COURT:  I will definitely extend discovery if

19   necessary, so you don't have to worry about that.  I'm going to

20   leave the next conference on for June 9th.  I think I penciled

21   that in the proposed case management order, at 9:45.  I will

22   wait to hear from you and then try to resolve this as quickly

23   as possible.

24        If the decision isn't rendered within the next 30 days

25   and you want to move forward with discovery, send me a letter

1   and tell me exactly what you want to do and when you want to do

2   it and what you propose.  I will decide whether or not I'm just

3   days from issuing an opinion so it might not matter, or I could

4   tell you to go ahead and do some or all, full-blown discovery

5   from that point in time.

6           As long as I hear from you before May 1st.  Give me at

7   least 30 days.  I will give you a week or ten days if you want

8   to respond to me as to some of these other issues, procedural

9   issues.  Then I will wait to hear from you.  If I haven't

10  rendered a decision by the end of April, I would like to hear

11  from you as to what discovery you want to go ahead and do.

12          MR. NOVIKOFF:  Thank you, your Honor.

13          MR. KESHAVARZ:  The specific request I had, I wasn't

14  sure what your Honor's ruling was.  The discovery deadline is

15  extended until your Honor makes a decision?  If it's 30 days

16  for your Honor to make a decision --

17          THE COURT:  What discovery deadline did we have?

18          MR. KESHAVARZ:  August 31st.

19          THE COURT:  If necessary, if reasonable, I will extend

20  the discovery deadline.  Quite frankly, I'm not sure what needs

21  to be done and how much you need to extend it.  There's not a

22  whole lot more paperwork, I assume, that is necessary, and

23  there are not a whole lot of depositions.

24          MR. KESHAVARZ:  I'm not sure that's the case.  One of

25  the issues in our claim is that they failed to do a meaningful

1 attorney review, that it is their policy and practices to file

2 robo objections.  Some of the discovery is we want to see those

3 objections that they file in court.  They are not producing

4 those.  They won't produce those.

5          THE COURT:  They will respond to those, and then I

6 will have to make a determination of whether or not you are

7 entitled to every single one of those or whether you need a

8 representative person to take their deposition or whether or

9 not it's really going to be relevant to the issue you are

10 trying to prove.

11          You haven't yet convinced me that this is a robo call

12 situation.  You could ask for some initial discovery.  If it

13 turns out that we've got several hundred people who showed up

14 to court under similar circumstances or they took similar

15 positions that you claim are inappropriate that would lead to

16 other discovery, then I can see that.

17          My hope is that in your initial disclosures you give

18 me some indication that this is a fruitful area of inquiry.

19 I'm not just going to give you carte blanche to get all their

20 other cases just on the hope that you are going to find a

21 pattern.  Provide in the first instance what kinds of things to

22 ask for in terms of interrogatories or other documents that you

23 think might be a basis to argue that you should pursue that

24 further.

25          MR. KESHAVARZ:  Are the defendants required to answer

1  the discovery that has been propounded or only produce the

2  documents that were ordered?

3       THE COURT:  I can't say that they are going to be

4  required to answer, because I don't know exactly what you have

5  asked them for and what you haven't gotten.  That's what I

6  expect in your letter.

7       MR. KESHAVARZ:  Okay.

8       THE COURT:  Ten days after I get that letter or I give

9  you a decision on what should go forward and what should not,

10  you should get a response as early as that.

11       At this point I think I had the final pretrial

12  conference already penciled in for September 22nd.  I can

13  guarantee you that if necessary I will extend discovery at

14  least through that date, until that time.

15       MR. KESHAVARZ:  The discovery expires before then.

16       THE COURT:  That's what I'm saying.  I'm telling you

17  now that I will extend it at least through September 22nd.  It

18  won't expire before that unless you tell me you have done it.

19       MR. NOVIKOFF:  Your Honor, the only thing that I would

20  ask in the interim is because your Honor asked me to produce

21  something that I think your Honor thought was relatively easy

22  to produce, and it was -- it was just going through a filing

23  cabinet apparently and getting some files -- if plaintiff's

24  counsel can produce the Bank of America bank records that he

25  has in his possession so that I can look at them.  I think that

1    is going to be a very relevant issue here.

2          Quite frankly, if the Bank of America bank records

3    differ from what was sent to us, that would lend, under your

4    Honor's analysis, credence to the reasonability of the position

5    of my client to suspect in the first instance that perhaps the

6    bank records didn't say everything that needed to be said.

7          This is a second reason why the bank records are

8    important.  If plaintiff's counsel is going to really assert

9    these actual damage claims for emotion pain and suffering, then

10   the argument goes to, as your Honor alluded to, all of the bank

11   money wasn't restrained, only a certain small portion of the

12   money was restrained.  I would like to see what else was in

13   those bank records, how much was in the bank account.

14         It's one thing to say if I only had $1700 in my bank

15   account and I spend $2,000 a month, and all $1700 were

16   restrained, I could then see a plausible argument to be made

17   that I have no money, I can't spend any money, how am I going

18   to pay my bills, eat, do everything else.  But if only 1700 in

19   this case were restrained but I have 4,000 or 5,000 in the bank

20   account, then I think an equally plausible argument is why were

21   you so upset, you still had sufficient funds to carry on for

22   that three-week period what you needed to do in your life.

23         THE COURT:  This is my position.  First of all, the

24   two of you should talk about what you can agree upon to

25   informally exchange between now and then.  To the extent you

G3nrarim

1  can't agree, then you should make your request of them formally

2  in terms of interrogatories or document requests.  You will

3  already have outstanding requests just like they have out-

4  standing requests, so both of you can be prepared to be able to

5  respond within 10 days of my telling you just go forward and

6  respond.  You will both be in that position to the extent you

7  haven't informally exchanged particular documents.

8          MR. NOVIKOFF:  Fair enough, your Honor.  Thank you.

9          THE COURT:  I'll leave it at that.  If I hear from

10  you, that's fine.  Otherwise, I'll try within the next 30 days

11  or before the end of April to go ahead and give you a decision

12  so you can move forward efficiently.

13          MR. KESHAVARZ:  One housekeeping matter.  There is a

14  standing order that allows for iPads and iPhones to be brought

15  in.  I do everything digitally.  Opposing counsel has agreed.

16  If the Court would indulge us.

17          THE COURT:  Why don't you submit that order.  There

18  seems to be some internal dispute about what the clerk's office

19  and the marshals are agreeing upon.  Submit the order to me.

20  I'll walk it through and then I'll agree to it.  Don't bring

21  your whole office every time you come to court.  Some limited

22  things for good reason is what is appropriate.

23          MR. KESHAVARZ:  Thank you.

24          THE COURT:  Thank you very much.

25          (Adjourned)